Opinion by
 

 Baldrige, J.,
 

 This action in assumpsit was brought against the defendant to recover the face value of an industrial policy of insurance. A trial was had in the municipal court before Judge Walsh, without a jury, who found for defendant, and subsequently denied plaintiff’s motion for judgment n. o. v. The parties having elected to try the issues involved without a jury, the findings of the judge, supported by competent evidence, have the same effect as a verdict of a jury.
 

 The contract of insurance on the life of Annie' D. Spruill was issued by the defendant on February 1, 1932, in the sum of $500, and named the plaintiff as beneficiary. It called for the payment of a monthly premium of $1.82 on the first day of each month, and stipulated that it constituted the entire contract between the parties and that its terms could not be changed except by the express agreement of the company, evidenced by the signature of its president or secretary; that agents, including assistant managers and managers, were not authorized to alter or discharge contracts, waive forfeitures, or receive premiums in arrears on policies beyond the grace period of thirty-one days; that if any premium was not paid when due, the policy would lapse.
 

 Notwithstanding the provisions in the policy, if defendant adopted a course of conduct which reasonably induced the policyholder to believe that a strict compliance with the stipulations for prompt payment of premiums would not be insisted upon, it will be deemed to have waived the right to claim an automatic forfeiture:
 
 Poles v. State Mutual Benefit Society,
 
 129 Pa. Superior Ct. 297, 195 A. 429.
 

 
 *89
 
 The insured died June 6, 1934. Admittedly, the premiums had been irregularly paid during the life of the policy. The last four payments were received by the company three and four days after the grace period of thirty-one days had expired. This four-day extension was granted by agents as the lapsed policies were not mailed to the home office of the company for cancellation until the evening of the fourth day; but there was no proof that the plaintiff had knowledge of this regulation. The premium due May 1st not having been paid, the policy was lapsed at the district office the evening of June 4, 1934.
 

 The appellant takes the position that the company, having accepted payments on prior occasions after the expiration of the grace period of thirty-one days, waived the requirement of payment within the specified time, and that the policy remained in force a reasonable time thereafter. The premium receipt book entries disclose that one premium, due March 1, 1933, was not paid until April t>, 1933; all other premiums were paid within the grace period and the four days allowed, except on three occasions when the policy was lapsed, but in each of these instances it was later reinstated.
 

 The appellant argues that before the insurance company could insist upon a strict performance after accepting the delayed payments, it was required to give her sufficient notice that in the future it would require rigid compliance with the provisions of the policy, citing
 
 Riddle Co. v. Taubel,
 
 277 Pa. 95, 96, 120 A. 776. The court there held: “Where time for the performance of a contract is extended from time to time, with no intention manifested to hold to literal performance, a party cannot rescind without a demand for strict compliance within a reasonable time [citing authorities]. What is a reasonable time in which to comply, where the facts are undisputed, is for the court; otherwise, or where the court is in doubt, the question is for the jury.”
 

 
 *90
 
 The testimony of the defendant in this case, which was evidently accepted as true by the judge, showed facts that rebut the argument that the plaintiff, who paid the premiums on this policy, was lulled into a sense of security. Uram, the defendant’s agent who succeeded the former agent, testified that he first called on the plaintiff on May 21, 1934, and asked her for the payment of the monthly premium that was due on May 1st and she told him she did not have the money but would pay when she got her check which generally came on the 20th; that he returned practically every day thereafter until June 4th to make the collection and always received the reply that she did not have the money. He was corroborated by Smiley, the assistant manager, respecting the conversation that was had the first day. The company was apparently diligent in doing all it could to urge the plaintiff to make payment of the overdue premium. Uram testified further that when he called on June 4th, claimant told him she was unable to pay the premium and asked him if he would not come around a few days later and “revive” the policy, and that he then told her the policy “will go out of benefit on that day.” Smiley testified that he also called on the plaintiff on June 4th when he “went out on the lapsed schedule,” and informed her that the policy was going “out of benefit” if it was not paid that day and that ■she said she could not pay it. He then said to her: “I am awful sorry, if I were you I would even try to borrow the money to pay the premium, because it is very important to keep the policy in benefit.” She expressed regret and asked the witness to have the agent call back in a day or two and she would try to pay it. He replied, “Yes, ma’am.” On June 6th, when Uram called again, the insured had died, and he refused to accept the premium.
 

 We think that the agent’s conduct in persistently calling on the plaintiff and finally giving express notice on
 
 *91
 
 June 4th that the premium must he paid on that day, and her recognition that the policy was void and her request that the agent call hack in a few days to have it revived, show that there was neither an implied nor an express waiver of the terms of the policy. She had had the experience of having the policy lapse and revived, and consequently it could reasonably be inferred that she knew that if the premium was not paid within the grace period, the policy would not remain in force and must then be formally revived. Her action indicated an acquiescence in this arrangement, which prevents her from relying upon an estoppel:
 
 Moss v. Aetna Life Ins. Co.,
 
 73 Fed. (2d) 339. Furthermore, when the money had been received on the previous occasions after the expiration of the grace period, the insured was in sound health.
 

 In
 
 Poles v. State Mutual Benefit Society,
 
 supra, the defendant offered no evidence, and, therefore, there were no disputed facts for the jury. The proposition relied upon was the acceptance and retention by it of six separate premium payments after a lapse which occurred December 30,1935, which it did not offer to return until April 27, 1936, the insured having died February 4, 1936. So, here, as the learned judge below points out, the acceptance of an overdue premium in the past would not constitute a waiver of the requirement of payment of the premium due May 1, 1934.
 

 In
 
 Lantz v. Vermont Life Ins. Co.,
 
 139 Pa. 546, 560, 21 A. 80, the policy provided that quarterly premiums were to be paid on or before the 19th day of February, May, August and November; that if the premiums were not paid on the days named and in the lifetime of the assured, the policy would cease and determine. The premiums were not paid when due, but were accepted later by the company. A brother of the insured called on the general agent of the company and said that the insured would pay the premiums on March 6, 1888. He
 
 *92
 
 was .told by the agent that he did not make out his report until the 10th of the month, and that if the payment were made by the 9th, it would be all right. The insured was in good health on the 6th, but was taken ill the next day and died March 8th. When the premium was tendered, it was refused. The court held that the receipt of overdue premiums on three previous occasions when the insured was in full life and health was not a waiver. “It was at most a mere personal indulgence, a matter of grace on the part of the company; and all that can be claimed for it is that it may have led the insured to believe that, if he again neglected to pay on the day, the money would be accepted if paid shortly thereafter, provided no change had occurred in his condition of health.” Mr. Chief Justice Paxson, in that case, quoted Mr. Justice Bradley, in
 
 Thompson v. Insurance Co.,
 
 104 U. S. 252, 26 L. ed. 765, as follows: “As long as the assured continued in good health, it is not surprising, and should not be drawn to the company’s prejudice, that they were willing to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured, at the time; and in each instance in which it happened it had respect only to that particular instance, without involving, any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions.”
 

 This court held in
 
 Sydnor v. Metropolitan Life Ins. Co.,
 
 26 Pa. Superior Ct. 521, that the acceptance of a second premium on a policy of life insurance after it had become due, and when the insured was in /good health, did not constitute a waiver of the conditions of the policy as to (the payment of future premiums, regardless of the health of the insured at the time such
 
 *93
 
 future premiums were permitted to become in default.
 

 Taking into consideration that tbe learned court below was a judge, not only of tbe law but also of tbe facts, we are of tbe opinion that we are not warranted in bolding that there was a waiver by tbe insurance company of tbe provisions of tbe policy that would amount to estoppel.
 

 Judgment is affirmed.