S. Curtis DEMPSEY and Alice E. Dempsey, Plaintiffs,

v.

Charles W. STAUFFER and Violet M. Stauffer, James E. Lawrence and Ruth B. Lawrence, Defendants.

Civ. A. No. 23732.

United States District Court E. D. Pennsylvania.

March 30, 1960.

Rohrer & Musser, Sam Ferguson Musser, Lancaster, Pa., for plaintiffs.

Alfred C. Alspach, Lancaster, Pa., Mark D. Alspach, Philadelphia, Pa., for

defendants, Chas. W. and Violet M. Stauffer.

James P. Coho, Lancaster, Pa., for defendants, James E. and Ruth B. Lawrence.

KRAFT, District Judge.

Plaintiffs brought this action to recover damages sustained by reason of their alleged wrongful eviction from premises owned by the defendants Stauffer and occupied, under a written agreement of sale, by the plaintiffs who operated a diner thereon. Plaintiffs also seek damages for the alleged wrongful conversion by defendants of foodstuffs and inventory in the diner at the time of the eviction.

Jurisdiction is based on diversity of citizenship.

Defendants Stauffer filed a counterclaim seeking reimbursement for sums expended by them for real estate taxes, water rents and for electricity consumed on the premises during plaintiffs' occupancy, all of which, they allege, were plaintiffs' obligations under the contract. The same defendants also claim actual costs and expenses, including counsel fees, incurred in the defense of this action.

Defendants Lawrence filed a counterclaim for actual costs and expenses, including counsel fees, incurred in the defense of this action.

On November 24, 1959, we ordered that the issues of liability be severed from the issues of damages and that the liability issues be first tried. The action was so tried to the Court without a jury. From the evidence produced, we make the following

### Findings of Fact

1. Under date of October 9, 1956, plaintiffs and defendants Stauffer entered into a written contract whereby plaintiffs agreed to buy and defendants agreed to sell 823 South Prince Street, Lancaster, Pennsylvania, with the diner building thereon, for the sum of $59,000, payable in weekly installments of $113.46 each, together with interest at the rate of 5% per annum on the unpaid balance, payable weekly.

2. The contract further provided, inter alia, that buyer "shall pay directly to the parties concerned the amount of all taxes levied against the premises, all sewer and water rents due thereon * * apportioned from October 10, 1956."

3. The contract was recorded in the Office for the Recording of Deeds in Lancaster County, Pennsylvania.

4. Plaintiffs immediately entered into possession of the premises, and operated their diner business thereon without interruption until November 14, 1957.

5. Tax for the City of Lancaster for 1957 was levied as of January 1. Two per cent rebate was allowed for payment before April 30; net tax was due during May and June; five per cent penalty was added July 1.

6. Tax for the County of Lancaster for 1957 was levied as of April 1. Two per cent rebate was allowed for payment before June 1; net tax was due during June and July; five per cent penalty was added August 1.

7. School tax for the School District of Lancaster City for 1957 was levied as of July 1. Two per cent rebate was allowed for payment before September 1; net tax was due during September and October; five per cent penalty was added November 1.

8. The plaintiffs did not pay any of the taxes levied against the premises for 1957, either during that year or thereafter.

9. As of November 1957, the water rent for the premises was also in arrears.

10. The contract of sale contains no express provision making time of the essence of the contract.

11. Defendant, Charles W. Stauffer, knew, in the early part of August 1957, that plaintiffs had not paid any of the taxes and water rent on the premises for the year 1957.

12. Neither the defendants Stauffer, nor anyone on their behalf, ever called

upon plaintiffs, or either of them, to pay the taxes and water rent due on the premises, or made demand upon the plaintiffs, or either of them, for strict compliance with the terms of the contract.

13. Plaintiffs, until evicted, faithfully complied with the terms of the contract for the weekly payment of principal and interest and made their fifty-seventh and last such payment on November 12, 1957.

14. In June or July 1957, defendant James E. Lawrence asked defendant Charles W. Stauffer whether the diner was for sale, and Stauffer replied, "I promised that to a couple of people".

15. On or about September 15, 1957, defendant Charles W. Stauffer called defendant James E. Lawrence on the telephone and asked him whether he was still interested in the diner since it might be for sale; Lawrence indicated that he and another man would like to have the diner.

16. On or about November 9, 1957, there were conversations between Defendants James E. Lawrence and Charles W. Stauffer concerning the sale of the diner to Lawrence, and four days later Lawrence discussed the proposed transaction with his attorney.

17. On November 13, 1957, the defendants reached an oral agreement for the sale of the premises by the Stauffers to the Lawrences for the consideration of $66,000.

18. Paragraph 15 of the contract of sale between plaintiffs and defendants Stauffer provides as follows:

"15. Termination on Default—If Buyer shall fail to make when due any payment required of Buyer under this agreement, or shall in any other respect commit a breach of this agreement, Seller may in Seller's discretion notify Buyer that this agreement is terminated. In such event all rights of Buyer under this agreement shall be null, void and of no effect, and Buyer shall thereafter have no interest whatever in the premises and Seller may deal with the premises as though this agreement had not been made; and, if this agreement shall have been recorded, Seller's affidavit of default and termination, when similarly recorded, shall be conclusive evidence of Seller's right to thereafter deal with the premises as though this agreement had never been made. Seller may in such event nevertheless retain all payments theretofore made by Buyer (except advance payments not yet due under the provisions of Paragraph 2 hereof and against which Seller shall have no claims arising from Buyer's past or future defaults) and may recover any further payments which shall then be due and unpaid or which shall thereafter become due until Buyer shall vacate the premises, which total sum of payments it is hereby agreed shall constitute the liquidated damages for breach of this agreement."

19. On the morning of November 14, 1957, defendants Stauffer, without notice to the plaintiffs or either of them, executed an affidavit of default in which they averred, inter alia, that plaintiffs had defaulted in the terms of the contract of sale in that they had made no payment on account of the water bill then due, and had not paid the 1957 City, County and School taxes, "all of which are now due and subject to penalty and/or lien".

20. The affidavit of default was recorded in the Office of the Recorder of Deeds at 10:10 A.M. on November 14, 1957.

21. On the same morning, November 14, 1957, the defendants executed a written installment agreement for the sale of the subject premises to the Lawrences for the consideration of $66,000. Settlement was made that morning in the office of Stauffers' attorney.

22. This agreement was recorded in the Office of the Recorder of Deeds at 3:15 P.M. on November 14, 1957.

23. On the morning of November 14, 1957, Constable Hess, at the direction of Stauffers' attorney, went to the premises and there met all the defendants. Neither plaintiff was present. The constable delivered to Mr. Reath, plaintiffs' representative, an envelope containing a copy of the affidavit of default and a letter from Stauffers' attorney directed to the plaintiffs, reading, in part, as follows:

> "This is to further advise you that your rights under this agreement have been terminated and you are to remove, personally, from 823 S. Prince Street, Lancaster, Pennsylvania forthwith. And you are further notified that none of the personal property at said 823 S. Prince Street is to be touched or moved by you."

24. Reath thereupon telephoned the husband plaintiff at his home in Maryland, and a conversation between Hess and Dempsey ensued, in the course of which Dempsey stated his understanding that he would be allowed to have his foodstuffs and other personalty on the premises. Hess stated that he could not agree to that, but that he would communicate with Stauffers' attorney and call Dempsey back. Hess did call back and stated that Dempsey could not "touch any of the foodstuffs," but that he could have his money from the cash register and other personal articles.

25. Constable Hess, Reath, and defendants Charles W. Stauffer and James E. Lawrence then made a written inventory of the foodstuffs, supplies and other personal property on the premises. Hess delivered to Reath the contents of the cash register, all personal papers and certain other articles of personalty.

26. Defendants Lawrence entered into possession of the premises, and began operation of the diner, at one o'clock on the same day, November 14, 1957. The diner remained open during the entire transaction.

27. Defendants Lawrence in their operation of the diner, used or otherwise disposed of all the foodstuffs and supplies listed in the inventory, which belonged to plaintiffs.

28. None of the defendants ever paid or offered to pay the plaintiffs for these foodstuffs and supplies.

29. Neither the defendants Stauffer, nor anyone on their behalf, ever gave the plaintiffs any prior notice of their intention to terminate plaintiffs' contract for the purchase of the premises. Plaintiffs' first knowledge thereof was from Reath's telephone call on the morning of November 14, 1957.

30. Plaintiffs never agreed to or acquiesced in the purported termination of the contract by defendants Stauffer nor to the confiscation by defendants of plaintiffs' foodstuffs and other personal property.

## Discussion

The oral testimony was in direct and irreconcilable conflict on several material points. After a searching review and consideration, however, we are persuaded that the clear weight of the credible evidence supports the foregoing findings of fact.

Under the clear and unambiguous terms of the contract, it was plaintiffs' obligation to pay "when due" the amount of all taxes levied against the premises and all sewer and water rents due thereon. Obviously, all taxes for the year 1957 were overdue for some time prior to November 14; it is unnecessary to determine the precise due date or dates. Plaintiffs, concededly, never paid either the taxes or the water rent. Defendant Charles W. Stauffer knew "around the first or second week in August" that plaintiffs had not met the obligations theretofore due. It is an admitted fact, however, that plaintiffs punctually met their regular weekly payments of principal and interest up to and including November 12, 1957, two days before the purported termination of their contract and the resale to the defendants Lawrence for a higher consideration. Never once during this period from August to November did the Stauffers make any

protest to the plaintiffs, or call upon them to comply in respect of tax and water rent payments, with the terms of their contract. While there is a sharp conflict in the testimony on this point, we accept the plaintiffs' version as the more credible. By their acceptance of these weekly payments of principal and interest, the Stauffers clearly recognized the contract as in full force and effect. We think that, in these circumstances, the sellers could not terminate the contract without demand on the plaintiffs for performance.

■ The case, in our view, falls squarely within the principle of the Pennsylvania cases that where time for the performance of a contract is extended from time to time, with no intention manifested to hold to literal performance, a party cannot rescind without a demand for strict compliance within a reasonable time. Riddle Co. v. Taubel, 277 Pa. 95, 120 A. 776; Hopp v. Bergdoll, 285 Pa. 112, 131 A. 698; Parish Mfg. Corp. v. Martin-Parry Corp., 285 Pa. 131, 131 A. 710; Dravo Contracting Co. v. James Rees & Sons Co., 291 Pa. 387, 140 A. 148; Parish Manufacturing Corporation v. Martin-Parry Corporation, 293 Pa. 422, 143 A. 103; Warren Tank Car Company v. Dodson, 330 Pa. 281, 199 A. 139; C. Trevor Dunham, Inc. v. Nemitz, 82 Pa.Super. 382; McGlinn v. Jackson, 86 Pa.Super. 562; Haggerty v. Metropolitan Life Insurance Company, 131 Pa.Super. 87, 198 A. 822; Matevish v. Ramey Borough School District, 167 Pa.Super. 313, 74 A.2d 797.

Shilanski v. Farrell, 57 Pa.Super. 137, is of no aid to the sellers, since, there, time was expressly and emphatically made the essence of the contract.

The real purpose behind the sellers' purported termination of the contract is painfully apparent from the most cursory consideration of the facts. Not until they had the Lawrences safely committed, and for a higher price, did the sellers indicate any intention to hold the plaintiffs to a literal performance of their covenants. Speaking of a comparable situation in Cleveland v. Salwen, 292 Pa. 427, 433, 141 A. 155, 157, the Supreme Court of Pennsylvania used language most appropriate in the present case: "Here certainly was no proof of good faith on the part of the property owners in their efforts to oust their tenants. Thomas v. Boyle, 265 Pa. 487, 109 A. 232. 'Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulation of the parties. There must be no cast of management or trickery to entrap the party into a forfeiture.' Helme v. Phila[delphia] Life Ins. Co., supra [61 Pa. 107], page 111." See Rea v. Eagle Transfer Company, 201 Pa. 273, 276, 50 A. 764.

■ We hold, therefore, that Stauffers' purported termination of the contract of sale was a breach of the contract and that they are liable to the plaintiffs for their damages resulting from the breach. Plaintiffs, on the other hand, are liable to the Stauffers for the real estate taxes and water rent on the premises for the year 1957, and for electricity consumed on the premises during plaintiffs' occupancy. Plaintiffs are not liable to the Lawrences on their counterclaim.

■ It is undisputed that Stauffers undertook and assumed to sell to Lawrences not only the real estate, but also plaintiffs' foodstuffs, supplies and other personal property in the diner at the time of the sale. Charles W. Stauffer testified that he sold the place "lock, stock and barrel". When he was asked by the trial judge why he thought that the foodstuffs were his to sell as part of the "lock, stock and barrel", Mr. Stauffer stated: "Why, to get back some of the money that I had to pay out for the electric light bill and the water rent and the taxes. I thought that would compensate for some of that". (Mr. Stauffer counterclaimed for these same items). Mr. Lawrence freely admitted that he

used these foodstuffs, etc., in his operation of the diner. It is admitted, too, that none of the defendants ever compensated the plaintiffs for these goods.

Defendants have not referred us to any provision of the contract of sale, or to any principle of law—and we know of none—which would entitle them to retain the plaintiffs' personal property on the premises, even in the case of a legal termination of the contract. Defendants clearly, were guilty of a conversion of this property, and are liable to the plaintiffs in damages.

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter.

2. The contract of sale of October 9, 1956, between the plaintiffs and the defendants Stauffer was a valid and subsisting contract.

3. Defendants Stauffer, in the circumstances, could not terminate the contract without a demand on the plaintiffs for performance, and their attempt so to do was a breach of the contract.

4. Defendants Stauffer are liable to the plaintiffs for their damages resulting from the breach of contract.

5. Plaintiffs are liable to the defendants Stauffer for the real estate taxes and water rent on the premises for the year 1957, and for electricity consumed on the premises during plaintiffs' occupancy.

6. Plaintiffs are not liable to the defendants Lawrence on their counterclaim.

7. Defendants were not legally entitled to retain and use plaintiffs' personal property on the premises at the time of plaintiffs' dispossession, and their act in so doing was a conversion.

8. Defendants are liable to the plaintiffs for their damages resulting from the conversion of plaintiffs' property.

### Order

Now, March 30, 1960, the Clerk is directed to place the within case for trial on the issue of damages at the head of our next civil non-jury list.