STATE DISTRIBUTORS, INC.,
Plaintiff-Appellant,

v.

GLENMORE DISTILLERIES COMPA-
NY and Foreign Vintages, Inc.,
Defendants-Appellees.

No. 82–1991.

United States Court of Appeals,
Tenth Circuit.

July 2, 1984.

Charles C. Spann, Spann, Latimer & Hollowwa, Albuquerque, N.M. (E. Douglas Latimer, Spann, Latimer & Hollowwa, Albuquerque, N.M., with him on brief), for plaintiff-appellant.

Thomas C. Kayser, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn. (Linda H. Groff and E. Anne McKinsey, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., and Bruce Hall, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M., with him on brief), for defendants-appellees.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The appeal is pursuant to 28 U.S.C. § 1291. The appellant, State Distributors, Inc. is the plaintiff below. It appeals from an adverse judgment of the United States District Court for the District of New Mexico, which denied State Distributors' requested relief under its complaint and awarded defendants costs.

I.

State Distributors is a wholesaler of alcoholic beverages, which is licensed to distribute products to retail outlets in the State of New Mexico. Some years ago during the 1960's State Distributors commenced purchasing an imported liqueur called Amaretto Di Saronno (Amaretto). This was acquired from an unidentified importer and was resold to retail stores throughout New Mexico.

Defendant Glenmore Distilleries Company (Glenmore) is a producer and supplier of alcoholic beverages. The defendant Foreign Vintages, Inc. (Foreign Vintages) is a national wholesale distributor and fully

owned subsidiary of Glenmore. In the late 1960's Foreign Vintages obtained and continues to possess the importation and distribution rights to Amaretto in the United States. Since the late 1960's State Distributors has obtained and purchased Amaretto from Foreign Vintages for further distribution and resale to retail stores in New Mexico.

This brings us to the present suit which was instituted by State Distributors which sought an injunction and damages in 1979 to contest defendants' appointment of a second wholesale distributor in New Mexico. Until such appointment, State Distributors had been the sole distributor of Amaretto in New Mexico. State Distributors has alleged in its complaint that such establishment of a dual distributorship violated the New Mexico Alcohol Beverage Franchise Act (Franchise Act), N.M.Stat.Ann. § 60–8A–7, *et seq.* and alternatively, constituted a breach of the distribution agreement between State Distributors and Glenmore.[1]

This lawsuit was originally commenced in New Mexico State district court of Bernalillo County. On defendants' motion the action was removed to the United States District Court for the District of New Mexico.

State Distributors then filed a motion to amend its complaint in order to join as defendants the New Mexico wholesale distributor and its owners that defendants Glenmore and Foreign Vintages had appointed as dual New Mexico distributors of Amaretto with State Distributors. Such joinder of the New Mexico residents would allegedly have defeated diversity jurisdiction in the federal court. The district court subsequently denied joinder.

The district court denied cross motions for summary judgment and the case proceeded to a non-jury trial on June 21–22, 1982. On July 15, the court entered judgment against plaintiff State Distributors and awarded costs to the defendants. As indicated above, State Distributors has sought review in this court.

The review sought by State Distributors requests reversal of the adverse judgment of the district court and a directed judgment in its favor on its complaint. Alternatively, State Distributors requests this court to remand the case to the district court with instructions to allow amendment of the complaint to join the specified New Mexico residents which in turn would result in a remand to the state court. Finally, State Distributors requests attorneys fees.

We have referred to some of the facts above. There we stated that in the mid-1960's, State Distributors entered into an oral agreement with a now unidentified broker/importer of Amaretto to distribute Amaretto to retailers in New Mexico. The oral agreement between State Distributors and the broker was never reduced to writing, nor have the specific terms or conditions of the agreement been established with any degree of certainty. It is clear, however, that until the time of the conduct leading to this suit, State Distributors was the sole distributor of Amaretto in New Mexico.

It was not until 1968 that Foreign Vintages assumed the national wholesale distributing and advertising for Amaretto in the United States. Foreign Vintages was acquired and became a wholly owned subsidiary of Glenmore in 1969.

In 1977, Glenmore announced its plans to appoint a second wholesale distributor, United Wholesale Liquors (United), for Amaretto in New Mexico. After State Distributors protested the proposal, Foreign Vintages rescinded its agreement with United and State Distributors again became the sole distributor of Amaretto in New Mexico. Later, Glenmore established certain performance guidelines governing the sale of Amaretto in New Mexico during the months of November and December 1978. State Distributors failed to attain

---

**1.** Unless otherwise indicated, references to the conduct of Glenmore will impliedly include the conduct of its fully owned subsidiary, Foreign Vintages.

the level of sales set in the performance guidelines.

State Distributors informed Glenmore of its intention to conduct a survey of all of its New Mexico accounts to identify those accounts with potential for increased sales. However, this survey, as far as the record shows, does not appear to have been completed.

In early 1979, State Distributors also announced a promotional program, labeled the "Mother's Day Program," and following consultation with Glenmore, sales goals were established in connection with this program. None of the goals were met and the program was unsuccessful.

On June 22, 1979, Glenmore notified State Distributors by letter of its intention to commence a dual distributorship in New Mexico on August 1, 1979. This contemplated utilization of State Distributors and United. State Distributors brought suit to challenge the appointment of United. State Distributors has continued to sell Amaretto to retailers since the appointment of the competing distributor and indeed during the pendency of this action.

## II.

The initial issue to be considered is: WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT THE NEW MEXICO ALCOHOL BEVERAGES FRANCHISE ACT WAS INAPPLICABLE AS FAR AS THE DISTRIBUTION AGREEMENT BETWEEN STATE DISTRIBUTORS AND GLENMORE WAS CONCERNED.

We now address that question.

The New Mexico Alcohol Beverages Franchise Act, N.M.Stat.Ann. § 60–8A–7 *et seq.*, became effective on April 11, 1975.[2] The Franchise Act prohibits a supplier's termination, cancellation, or failure to renew a franchise agreement with a New

Mexico wholesaler, except in good faith or for good cause. N.M.Stat.Ann. § 60–8A–8(A). A further provision is the definition of "termination" to include "any substantial alteration or modification of the provisions of the franchise." N.M.Stat.Ann. § 60–8A–7(D). Apparently, the prime motivation for enaction of the Franchise Act was the concern of the New Mexico Legislature over the absence of legal remedies available to terminated distributors, where the custom in the liquor business is to deal informally and orally with the suppliers. *Southwest Distributing Company v. Olympia Brewing Company,* 90 N.M. 502, 565 P.2d 1019 (1977).

State Distributors contends that the district court erred in holding that the Franchise Act was inapplicable to its distribution agreement with Glenmore. The conclusion of the district court was that the Franchise Act having become prospectively effective in the early 1970's, has no application to the original distribution agreement between State Distributors and the unidentified broker in the mid-1960's, to the continuation of the agreement between State Distributors and Foreign Vintages in 1968, nor to the continuing agreement between State Distributors and Glenmore after 1969.

Glenmore maintains that the district court correctly concluded that the Franchise Act was inapplicable, but it also argues in the alternative that if the Franchise Act is applicable, it must be held unconstitutional as an impairment of existing contracts. All parties rely on language in the New Mexico Supreme Court decision of *Southwest Distributing Company v. Olympia Brewery Company,* 90 N.M. 502, 565 P.2d 1019 (1979), the sole New Mexico decision addressing the applicability of the Franchise Act to agreements predating the Act's effective date.

---

**2.** In determining that the Franchise Act was inapplicable to the distribution agreement between State Distributors and Glenmore, the district court cited the Franchise Act as N.M.Stat. Ann. § 60–9–8 and stated its effective date to be July 1, 1973. Both parties apparently agree that

it is the later effective date of the recodification of the statute as § 60–8A–7 that is relevant to this appeal. Because as stated below, we do not decide the applicability of the Franchise Act, this unexplained inconsistency need not be addressed.

A defense to an allegation of a violation of the Franchise Act is that the supplier terminated, cancelled, substantially modified, or refused to renew the franchise agreement in good faith and for good cause. N.M.Stat.Ann. § 60–8A–10. The conclusion of the district court was that all actions and conduct undertaken by Glenmore were undertaken in good faith and for good cause. Therefore, if one assumes that the Franchise Act is applicable to the distribution agreement between State Distributors and Glenmore, the conclusion that Glenmore acted in good faith and for good cause in appointing United as a second distributor in New Mexico precludes a finding that Glenmore violated the Franchise Act and defeats State Distributor's first cause of action.

Therefore, if this court finds no error in the district court's determination of good faith and good cause, the dispute as to the applicability of the Franchise Act becomes irrelevant and need not be resolved. As discussed below, the record reveals no such error in the district court's determination, and, therefore, this court may dispose of this appeal without determining the applicability of the Franchise Act.

We next address the issue:

WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT GLENMORE ACTED IN GOOD FAITH AND FOR GOOD CAUSE IN APPOINTING A SECOND DISTRIBUTOR.

State Distributors has contended that Glenmore failed to affirmatively plead such defense and thus, that must first be considered before we can review the district court's determinations of good faith and good cause. State Distributors argues that a defendant's claim of exemption from the operation of a remedial statute, such as the Franchise Act, must be affirmatively pleaded. *Citing Rachbach v. Cogswell,* 547 F.2d 502 (10th Cir.1976). Glenmore maintains that its defense of good faith and good cause was adequately pleaded.

Rule 8(c) requires a defendant to set forth in his answer specified affirmative defenses and "any other matters constitut-

ing an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). Glenmore's answer contained no such affirmative pleading of good faith and good cause to avoid the application of the Franchise Act. It must be remembered, however, that the policy behind Rule 8(c) is to put plaintiff on notice well in advance of trial that the defendant intends to present a defense in the nature of an avoidance. *Hardin v. Manitowoc-Forsythe Corporation,* 691 F.2d 449, 458 (10th Cir.1982). The facts of the case at bar reveal that State Distributors was fully prepared to meet the issues of good faith and good cause at trial.

Some six months before commencement of the trial, the parties conferred and the district court executed a pre-trial order to control the subsequent course of the trial. The pre-trial order identified as contested issues of fact whether defendants acted in good faith and whether their appointment of a second distributor in New Mexico was for good cause. R. Vol. I at 50. At no time did State Distributors object that the defense of good faith and good cause had not been affirmatively pleaded in Glenmore's answer; in fact, the pre-trial order reveals that State Distributors merely objected to Glenmore's defense that the Franchise Act was unconstitutional because Glenmore had failed to plead *that* defense in its answer. *Id.* The order also states that reasonable opportunity had been afforded the parties for corrections or modifications of the order prior to execution by the court.

Thus, the facts show that State Distributors recognized the presence of good faith and good cause in the case and acquiesced in the introduction of evidence on that issue without objection. Such recognition and acquiescence is adequate to find implied consent under Rule 15(b). *Hardin, supra,* at 457.

The general purpose of Rule 8(c) is to provide particularized and specific notice of certain defenses. Consequently, before finding implied consent courts must be especially careful to scrutinize the record

to insure that plaintiff had sufficient notice and opportunity to rebut an allegedly tardily raised affirmative defense. *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir.1969). In the case that is under consideration it is clear that State Distributors had adequate notice and opportunity to rebut the defense of good faith and good cause and, in fact, it presented evidence attempting to show the existence of bad faith and no cause. *E.g.*, R. Vol. V at 101 (where State Distributors states to the court that the purpose of offering certain testimony was to establish whether Glenmore dealt with State Distributors in good faith or in bad faith). Thus, the issue was plainly before the district court and the court was explicit in determining that Glenmore acted in good faith and for good cause. It is often repeated that the purpose of the federal rules is to provide the maximum opportunity for each claim to be decided on the merits rather than on the basis of procedural factors. The main purpose of the rules would be evaded if we were to hold that the defense was not properly raised. Accordingly, we conclude that the defense was raised sufficiently.

Having disposed of State Distributors' procedural argument, we now proceed to the consideration of whether the evidence supported the court's determination of good faith and good cause.

The district court made extensive findings and conclusions.[3] Also the district court reached two separate conclusions of law regarding good faith and good cause. In Conclusion No. 2 the court stated:

Glenmore acted in good faith in instituting a dual distributorship in New Mexico and acted in good faith at all times pertinent hereto, in observing its obligations to State under its agreement with State for the distribution of ADS [Amaretto] in New Mexico.

In Conclusion No. 5 the court further stated:

All actions undertaken by Glenmore were undertaken in good faith and for good cause consistent with its national distributorship of ADS and its program to expand sales of ADS in New Mexico.

It is well for this court to call attention to the fact that this court does not retry facts. A trial court's findings based on sharply conflicting evidence is binding unless clearly erroneous. Fed.R. Civ.P. 52; *Rasmussen Drilling, Inc. v. Kerr McGee Nuclear Corporation*, 571 F.2d 1144, 1149 (10th Cir.), *cert. denied*, 439 U.S. 862 (1978); *Golubin v. United States*, 393 F.2d 590 (10th Cir.), *cert. denied*, 393 U.S. 831, 89 S.Ct. 100, 21 L.Ed.2d 102 (1968). The court below has the exclusive function of appraising credibility, determining the weight to be given the testi-

3. The most relevant findings of fact being numbers 10, 12, 15, 18, 19, 21, 24 are reproduced below:

10. Due to a low volume of sales of ADS in New Mexico in 1977, Glenmore decided to appoint United Wholesale Liquors, hereinafter referred to as "United Wholesale," another licensed New Mexico wholesaler, as an additional distributor of ADS (Amaretto) in New Mexico.

12. Upon State's agreement to undertake distribution reviews and undertake efforts to increase sales, Glenmore decided to give State another opportunity to improve sales in New Mexico and rescinded its distributorship agreement with United Wholesale.

15. Although State sold alcoholic beverages to approximately 1300 accounts in New Mexico, it was State's business judgment not to promote the sales of ADS in all of its accounts but, rather, to limit promotion to designated accounts, contrary to the marketing philosophy of Glenmore.

18. In acknowledging the performance guidelines in its letters of December 8, 1978, State informed Glenmore that after the first of the year, State would run a very thorough survey for all accounts within the State to identify the accounts with real potential for the expansion of ADS sales; that to the knowledge of Glenmore, this survey was never accomplished.

19. State failed to reach the performance guidelines and achieved very low sales figures.

23. None of the objectives of the Mother's Day Program were achieved and State gave no reason for the failure to achieve the desired goals.

24. After failure of the Mother's Day Program, Glenmore decided to employ a dual distributorship in New Mexico and Richard Young, Glenmore's Vice President of Sales, traveled to Albuquerque, New Mexico, to meet with Ben Lanford, Sr. and Thomas Neel to announce Glenmore's decision.

mony, drawing inferences from facts established, and resolving conflicts in the evidence. *Rasmussen, supra* at 1149. A choice between two competing but permissible views of the evidence is not clearly erroneous; where the court acts as fact finder the reviewing court in determining permissibility must view the evidence in the light most favorable to the prevailing party. *Id.* at 1148. Accordingly, after a review of the entire evidence, unless the reviewing court is left with the definite and firm conviction that a mistake has been made, the findings of the district court are to be upheld. *Kelson v. United States,* 503 F.2d 1291, 1295 (10th Cir.1974).

 The appellate court is not bound by the trial court's conclusions of law, however. *Bradshaw v. Superior Oil Co.,* 164 F.2d 165, 167 (10th Cir.1947). Moreover it is fundamental that a judgment cannot be sustained on appeal unless the conclusion upon which it rests has support in one or more findings of fact. Consequently, this court must determine whether a fair construction of all of the district court's findings supports its conclusion that Glenmore acted at all times in good faith and for good cause.[4]

It is the contention of State Distributors that the only evidence supporting the district court's findings of fact are Glenmore's own self-serving contentions that sales and distribution in New Mexico were inadequate. This is clearly not the case; the evidence considered in the light most favorable to Glenmore reveals ample evidence to support the court's findings.

We need not articulate the evidentiary support for each of the court's findings. It will suffice to furnish examples which illustrate our determination of sufficiency. Finding of Fact No. 15 states that contrary to Glenmore's general market philosophy, State Distributors refused to promote the sale of Amaretto in all of its accounts or retail outlets throughout New Mexico. The record does not reveal that State Distributors denied this refusal; instead, the record reveals that the refusal was based on State Distributors' judgment that the up-scale Amaretto product lacked appeal to some of its accounts and retail outlets which involved principally beer sales. Plaintiffs' Exhibit 15, State Distributors' letter dated December 8, 1978. Accordingly, the evidence in the record supports the court's finding.

Finding of Fact No. 18 is also supported by the evidence. Thus the evidence is uncontroverted that State Distributors notified Glenmore of its plans to conduct a "very thorough survey ... for all of the accounts within the state ...." Plaintiff's Exhibit 15. The record reveals that the survey was never completed, nor were reasons for such apparent failure ever communicated to Glenmore. Accordingly, the evidence in the record supports Finding of Fact No. 18.

We have concluded that the district court's findings of fact have adequate support in the evidence. This court now must determine whether those findings support the district court's conclusions of law. The Franchise Act defines "good cause" as in-

4. It is arguable that the district court's determinations of good faith and good cause are more properly findings of fact rather than conclusions of law, and as such, are binding upon this court unless clearly erroneous. *E.g. Oscar Gruss & Son v. First State Bank of Eldorado,* 582 F.2d 424 (7th Cir.1978). It should be noted that courts of appeals have not held themselves bound by the district courts' designation under Rule 52 of individual determinations as conclusions of law when in fact they are more properly findings of fact. *See e.g. Dempsey v. Stauffer,* 312 F.2d 360 (3rd Cir.1962) (applying a clearly erroneous standard of review to the district court's determination of a bad faith breach of contract despite the district court's designation of the determination as a conclusion of law in 182 F.Supp. 806, 811 (E.D.Pa.1960)). This treatment is consistent with the purpose behind Rule 52's distinction between fact and law, which is to aid the trial court in making a correct appraisal of the evidence and the law to the end that a sound decision is made, to show what has been adjudicated for future purposes of res judicata and estoppel by judgment, and to aid the appellate court where an appeal is taken. Fed. R.Civ.P. 52, Advisory Committee Note. However, because here the district court's determinations survive the more stringent standard of review accorded conclusions of law, we need not treat the determination as findings of fact to uphold the district court's judgment.

cluding "the failure by the wholesaler (distributor) to substantially comply with the essential and reasonable provisions of the agreement or understanding with the supplier" as well as the use of "bad faith on the part of the wholesaler in carrying out the terms of the agreement." N.M.Stat. Ann. § 60–8A–7(B). The Franchise Act does not define the statutory term "good faith."

The parties correctly acknowledge that the New Mexico Supreme Court has not yet construed these statutory terms; however, federal courts presented with similar questions of interpreting state franchise laws have looked to the interpretations and applications of corollary language in the federal "Day-in-Court Act," 15 U.S.C. § 1221 *et seq.* (1982) (addressing automobile dealer suits against manufacturers), and franchise protection laws in other states. *E.g., Scuncio Motors, Inc. v. Subaru of New England, Inc.,* 555 F.Supp. 1121, 1134 (D.R.I.1982), *aff'd* 715 F.2d 10 (1st Cir. 1983). In the absence of any New Mexico legislative history to the contrary, it is reasonable for this court to look to decisions interpreting these other statutes for guidance in determining the intended meanings of the statutory terms good faith and good cause under the Franchise Act.

■ This circuit has long held, a viewpoint which is likewise held by other circuits, that in order for a supplier's conduct to lack good faith under the federal Day-in-Court Act, such conduct must be coercive and intimidating as well as being unfair and inequitable. *Howard v. Chrysler Corp.,* 705 F.2d 1285, 1286 (10th Cir.1983); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corporation in U.S.A.,* 533 F.2d 510 (10th Cir.1976). In support of such an interpretation, the courts point to Congress' concern for the unequal bargaining power between the automobile manufacturer-supplier and the dealers and the abuses resulting therefrom and Congress' purpose by enactment of the statute to balance the power between the groups. *Randy's Studebaker, supra* at 515. Because the same purpose was behind the New Mexico

Legislature's enactment of the Franchise Act, this court will apply the above definition of good faith to the Franchise Act.

To ascertain whether Glenmore's actions were in good faith and for good cause, it is necessary to examine the decisions. A supplier is not guilty of lack of good faith where the distributor has failed to comply with the franchise agreement terms for a long period of time. *Kotula v. Ford Motor Company,* 338 F.2d 732 (8th Cir.1964); *Woodard v. General Motors Corp.,* 298 F.2d 121 (5th Cir.), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962). The supplier is not prohibited from terminating or refusing to renew the franchise of a distributor for inadequacy of representation. *Autohaus Brugger, Inc. v. Saab Motors Inc.,* 567 F.2d 901 (9th Cir.), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978). Further, the supplier is not limited in making legitimate business judgments as to the preferred location of franchises. *Salco Corp. v. General Motors Corp., Buick Motor Division,* 517 F.2d 567 (10th Cir.1975).

■ The Franchise Act is not to be read as forcing a particular supplier and distributor to deal with one another despite irreconcilable conflicts in marketing philosophies, nor can it be read so as to require the court to second-guess the business judgment of the supplier in terminating such a franchise. *See Excello Wine Co. v. Monsieur Henri Wines, Ltd.,* 474 F.Supp. 203, 210 (S.D.Ohio 1979). The supplier is not precluded from dealing firmly but fairly with the distributor in order to protect the survival of the business and protect its investment. *Kolb v. Chrysler Corporation,* 661 F.2d 1137, 1140 (7th Cir.1981).

■ Looking at these legal standards, it becomes evident that the district court's findings of fact support the conclusion that Glenmore acted in good faith and for good cause in instituting a dual distributorship in New Mexico. After all it has some interests which it is advancing. Findings of Fact Nos. 10, 15, 18, 19 and 23 directly support a conclusion that State Distributors consistently failed to meet sales expec-

tations, followed a marketing philosophy contrary to that of Glenmore, failed to take sufficient steps, as promised, to improve its performance, and in Glenmore's business judgment failed to adequately represent its product in New Mexico.[5] In addition, Findings of Fact Nos. 11, 12, 20, 21, 24 support a conclusion that Glenmore repeatedly notified State Distributors of its sub-standard performance and attempted to precipitate improvements.

■ Notwithstanding this evidence, State Distributors contends that the district court incorrectly relied on State Distributors' failure to meet the performance or sales guidelines established by Glenmore, because such guidelines constituted unreasonable quotas established in bad faith. It is true that the Franchise Act may be violated when the supplier sets an unrealistic goal and then selectively terminates a dealer for failure to meet that goal. *See, e.g., Autohaus Brugger, supra* at 912; *Carlo C. Gelardi Corp. v. Miller Brewing Co.*, 502 F.Supp. 637, 653 (D.N.J.1980). In determining whether a particular goal is unreasonable and whether the distributor was selectively and improperly terminated for failure to attain the goal, we must look at the particular circumstances surrounding the parties' conduct. *See Marquis v. Chrysler Corp.*, 577 F.2d 624, 634–635 (9th Cir.1978). In *Marquis,* the franchise agreement between the manufacturer, Chrysler, and the dealer permitted Chrysler to terminate the franchise if the dealer's sales performance fell below the performance goal established in its Minimum Sales Responsibility (MSR). In finding that Chrysler lacked good faith in terminating the distributorship, the court of appeals

cited Chrysler's failure to previously enforce the MSR clause or to adjust it to excuse periods of sub-MSR sales. *Id.* at 633. Rather, Chrysler permitted the distributor to continue its business with sales below the MSR. *Id.* at 633. The court thus found that when it suited Chrysler's purposes, it demanded post facto compliance with the MSR and terminated the distributorship. *Id.* Further, the court held that the termination was motivated by other reasons and that the failure of the dealer to meet its MSR could not be used to shield those impermissible reasons. *Id.* at 633.

■ The facts in the case at bar are substantially different from *Marquis.* The evidence fails to show here that Glenmore improperly formulated or selectively applied sales performance guidelines. Courts recognize that suppliers may pressure a distributor into improving its performance or instituting changes that will benefit both the distributor and the supplier. *Volkswagen Interamericana, S.A. v. Rohlsen,* 360 F.2d 437, 422 (1st Cir.), *cert. denied,* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966); *Chinetti-Garthwaite Imports, Inc. v. Ferrari Societa Per Azioni Esercizio Fabbriche Automobili E Corse,* 463 F.Supp. 73, 79 (E.D.Pa.1978). It is, after all, only when pressure is exerted to force the distributor to accede to terms that will benefit only the supplier that the conduct is suspect as intimidation or coercion. *Id.*

■ Here there is no such suspect conduct. State Distributors participated in the formulation of the Mother's Day perform-

---

**5.** The record is replete with evidence supporting the objective accuracy of Glenmore's judgment and their subjective good faith in reaching that judgment. For example, State Distributors' exhibit No. 19, a letter from Glenmore to State Distributors dated January 26, 1979, illustrates Glenmore's concern for the poor representation of their product by State Distributors. The letter states:

It came to my attention that State Distributors ran out of inventory on Amaretto Di Saronno in January and furthermore no orders were in transit to alleviate the out-of-stock. The net result being that the marketplace is out-of-business on Di Saronno for the month of January.

Based on the fact that we have spent the last sixty days trying to correct the distribution/volume inadequacies on Amaretto Di Saronno, I find it rather disheartening that State was paying little, if any, attention to the inventory levels on the brand. Out-of-stock means out-of-business, with the proliferation of substitute Amarettos in the market, you leave the door wide open for the "cheaters" to get in.

ance guidelines and the record fails to reveal that State Distributors seriously objected to any of the guidelines at the time they were established. Further, attainment of the guidelines would have benefited both State Distributors and Glenmore through increased sales; they would not have resulted in a benefit to Glenmore at the expense of State Distributors. Lastly, the evidence shows that Glenmore repeatedly attempted to work with State Distributors to improve its performance. However, State Distributors repeatedly failed to complete its agreed upon undertakings. These facts and circumstances support the district court's conclusions that at all times Glenmore acted in good faith and for good cause. Consequently, State Distributors' statutory cause of action for violation of the Franchise Act fails.

### III.

DID THE FINDING AGAINST STATE DISTRIBUTORS ON ITS SECOND, NON–STATUTORY CAUSE OF ACTION, CONSTITUTE ERROR IN DETERMINING THAT GLENMORE'S INSTITUTION OF A DUAL DISTRIBUTORSHIP IN NEW MEXICO DID NOT CONSTITUTE A BREACH OF THE DISTRIBUTION AGREEMENT.

State Distributors maintains that the district court erred in determining that the agreement with Glenmore did not grant to State Distributors an exclusive distributorship for Amaretto in New Mexico. Instead, State Distributors claims that the evidence shows that its agreement with Glenmore established an exclusive distributorship in New Mexico. Consequently, State Distributors contends that even if the Franchise Act is inapplicable, Glenmore breached this exclusive distributorship agreement by appointing United as the second distributor of Amaretto in New Mexico.

The evidence having to do with the granting of an exclusive distributorship is in conflict. The district court's finding that the distributorship agreement was oral and that its terms were never established with any degree of certainty is well supported by the evidence and is not and cannot be contested. Instead, State Distributors apparently relies on two arguments when it contends that such an exclusive distributorship was granted. First, State Distributors contends that since the mid-1960's (the beginning of distribution of Amaretto in New Mexico) and until 1979, it was the sole distributor of Amaretto in New Mexico. State Distributors asserts that the effect given the distribution agreement by it and Glenmore clearly evidences an intent to grant an exclusive distributorship. Second, State Distributors contends that it is the custom and practice among New Mexico wholesalers to distribute alcoholic beverages only on an exclusive basis. State Distributors contends this further evidences the parties' intent to grant State Distributors an exclusive distributorship.

The same standards of review which have been already enumerated also apply to the review of the district court's disposition of this non-statutory cause of action. After reviewing the evidence in the record, we conclude that State Distributors' contentions lack merit; the district court's findings and conclusions are not in error.

The claim of State Distributors that the existence of an exclusive distributorship is proved by its operation as the only distributor of Amaretto in New Mexico is incorrect. These facts may plausibly be interpreted as showing that Glenmore merely chose not to exercise its on-going right to appoint another distributorship during the late 1960's and throughout most of the 1970's. Where a conclusion of state law is involved, it is not error if the district court merely reached a permissible conclusion. *United States v. Hunt*, 513 F.2d 129, 136 (10th Cir.1975).

Neither is State Distributors' second argument regarding the New Mexico custom

and practice supported by the evidence in the record. In support of its contention, State Distributors relies primarily on the deposition of Wallace Grasmuck, a retired wholesale distributor of alcoholic beverages. Plaintiff's Exhibit No. 35, Deposition at 19–21. However, upon review, the deposition reveals that Grasmuck's opinion was based on his experience as a wholesaler in Texas and from "talking to other wholesalers." *Id.* at 22. In addition, he admitted that he had never had any dealings with either Glenmore or Foreign Vintages.[6] *Id.* at 19. Consequently, this court cannot say on review that the district court erred in concluding that the evidence before it failed to establish the granting of an exclusive distributorship to State Distributors. Consequently, the district court was correct in further concluding that Glenmore did not breach its distributorship agreement with State by appointing a second distributor.

## IV.

DID THE DISTRICT COURT ERR IN DENYING STATE DISTRIBUTORS' MOTION TO AMEND ITS COMPLAINT TO JOIN ADDITIONAL AND NON–DIVERSE DEFENDANTS.

Soon after this case was removed to the district court from the state court, State Distributors sought to amend its complaint to join United and its owners, all New Mexico residents, as additional defendants. The basis of the complaint against United was an allegation that it tortiously interfered with the then existing business relationship between Glenmore and State Distributors. Glenmore objected to the requested amendment stating that such joinder of the additional defendants would destroy complete diversity. The district court refused to allow an amendment of the complaint. State Distributors contends that the refusal was reversible error.

However, it has been long established and this court has often reiterated that allowance of amendments is in the discretion of the district court and that, consequently, allowance of or refusal to permit amendment is not subject to appeal except for abuse of discretion. *United States Fidelity and Guaranty Company v. United States*, 389 F.2d 697 (10th Cir. 1968). In determining whether to allow amendment of a complaint, the court typically considers several factors. These include whether the amendment will result in undue prejudice, whether the request was unduly and inexplicably delayed, was offered in good faith, or that the party had had sufficient opportunity to state a claim and failed. *E.g., Local 472, etc. v. Georgia Power Company*, 684 F.2d 721 (11th Cir. 1982). Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial. *See Svoboda v. Trane*, 495 F.Supp. 367 (E.D.Mo.1979), *aff'd* 655 F.2d 898 (8th Cir.1981).

Also amendments adding parties may involve consideration of Fed.R.Civ.P. 20, governing permissive joinder. *E.g., Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446 (N.D.Cal.1975) (where the court stated that it is implicit in Rule 15 that plaintiff may amend his complaint only to add matters that otherwise would have been proper to include in the original complaint). Consequently, this requires a determination by the district court of whether any right to relief asserted by plaintiffs against all defendants "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and any operation of law or fact common to all will arise in the action." Fed.R.Civ.P. 20(a).

From a review of the district court's refusal to allow amendment, this

---

6. Finding of Fact No. 14 states that it was the announced policy of Glenmore not to have exclusive distributorships; but instead, to appoint distributorships on a non-exclusive basis.

court is unable to conclude that State Distributors has shown that the district court abused its discretion. The proposed joinder of United and the allegations against it are only tangentially related to the issues and series of transactions in the present case. Different elements of proof are required for the proposed cause of action, involving different questions of fact and law. Moreover, failure to join United in this action has not prejudiced any right of action or claim State Distributors may yet pursue against United. Therefore, the district court did not abuse its discretion in denying State Distributors' motion to amend.

## V.

Being convinced that the trial court did not commit reversible error in its many rulings, the judgment must be and it is hereby affirmed.