**William I. KOCH, et al., Plaintiffs,**

v.

**KOCH INDUSTRIES, et al., Defendants.**

No. 85–1636–C.

United States District Court,
D. Kansas.

June 23, 1989.

Robert Martin, Martin, Pringle, Oliver, Triplett & Wallace, Wichita, Kan., Harry L. Najim, Najim & Baker, Wichita, Kan., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Linn & Helms, Oklahoma City, Okl., Stinson, Mag & Fizzell, Overland Park, Kan., for plaintiffs.

Milbank, Tweed, Hadley & McCloy, New York City (United States trust).

Ralph I. Miller, Frank L. Hill, Dallas, Tex., for Rocket Oil Co.

Robert L. Howard, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on plaintiffs' motion to file a second amended complaint. With the filing of defendants' surreply memorandum in opposition, the court considers the matters adequately presented and ripe for decision. Plaintiffs' motion for leave to respond to defendants' surreply is denied. The district court is deciding this motion to file a second amended complaint, rather than the magistrate, as the issues argued address matters requiring the interpretation and reconsideration of the district court's prior orders filed November 5, 1986, and February 19, 1987.

The unusual and complicated procedural history to this litigation is worthy of a brief summary. In 1982, William Koch and other shareholders filed an action against Koch Industries and its management, and among the theories advanced were breach of fiduciary duties and fraud. Plaintiffs' allegations against the individual defendants included managing the company for their personal benefit and misusing their offices and the company's credit for the purpose of fraudulently acquiring majority voting control of Koch Industries. This lawsuit was settled resulting in the Stock Purchase and Sale Agreement dated June 4, 1983. Pursuant to the agreement, Koch Industries purchased all of its stock owned by the plaintiffs at an agreed price and, in exchange, the plaintiffs dismissed their lawsuit.

On June 7, 1985, William I. Koch, Oxbow Energy, Inc., Rocket Oil Company, United States Trustee Company of New York, as Trustee, and other former shareholders in Koch Industries filed a class action against Koch Industries, Charles Koch, and Sterling Varner. Plaintiffs alleged they were induced to sell their ownership of approximately 48% of the issued and outstanding capital stock in Koch Industries due to defendants' misrepresentation or concealment of the true value of the stock. Plaintiffs further alleged that defendant designed and executed a scheme to conceal the existence or understate the value of certain assets owned directly by Koch Industries or held for its benefit. Plaintiffs' claims included: breach of warranty, breach of fiduciary duty, securities fraud, and common-law fraud. Plaintiffs sought to recover compensatory damages measured by the selling shareholders' pro rata share of the value of all undisclosed assets and by the difference between the true value and represented value of all assets and property owned by Koch Industries or its subsidiaries.

Within two weeks of filing their complaint, plaintiffs served notices to take the records deposition of several financial institutions which had financed Koch Industries' purchase of the plaintiffs' stock. These depositions were concluded in October of 1985. As averred by William Koch, plaintiffs completed their review in January 1986 of the over 3,000 documents obtained from the banks. From the filing of the complaint until after November 5, 1986, this is the only discovery accomplished by plaintiffs, since discovery had either been stayed by court order or defendants had refused discovery pending final decision on their motions requesting a stay of the discovery.

On July 26, 1985, defendants filed a motion to dismiss plaintiffs' complaint. Before responding to this motion, plaintiffs filed an amended complaint on September 20, 1985, as a matter of course under Fed. R.Civ.P. 15(a). The amendments merely clarified and expounded upon the same basic allegations.

Defendants renewed their motion to dismiss and alternative motion for summary judgment on October 28, 1985. Without objection from defendants, plaintiffs were given two extensions of time to file their response, which they did on January 22, 1985. In their briefs, plaintiffs referred to other instances of alleged fraudulent conduct concerning oil fields at Pouce Coupe, Giltedge and Cold Lake; the refining capacity of the Pine Bend Refinery; and the financial and accounting policies and practices of Koch Industries. None of these

assets or practices were specifically alleged in plaintiffs' amended complaint.

On November 5, 1986, this court entered an order granting in part defendants' motion to dismiss and alternative motion for summary judgment. First, the court found that the pleading requirements of Fed.R. Civ.P. 9(b) were satisfied as to the three assets specifically alleged in the complaint: Koch Qatar, Inc., the Capa Madison Unit, and the Bates & Reiman wells. The court, however, held that the following allegation fell short of 9(b) demands:

22. Since discovery of the facts and circumstances alleged in paragraphs 10 through 21 above, plaintiffs have not had sufficient time and access to information to complete investigations and assessments of the probable values, extent and acquisition dates of assets and property now believed to have been owned by Koch Industries or its subsidiary corporations at the time of the 1983 stock purchase and sale transaction. Plaintiffs allege that during 1982 and continuing to the present time, defendants planned and acted to conceal the true value of shares of stock in Koch Industries from plaintiffs and the other selling shareholders and carried out a scheme designed to understate the existence, extent and value of property and assets owned directly or beneficially by Koch Industries by failing to disclose the existence, location, ownership, condition and true value of assets and property, including, but not limited to, oil and gas reserves, acreage, prospects and properties, oil and gas production and planned development of oil and gas properties owned or acquired prior to June 10, 1983.

The court noted that plaintiffs had referred to other alleged examples of fraudulent conduct in their briefs but that they had not pled those instances with the necessary particularity. The court further granted summary judgment on plaintiffs' claims regarding two of the assets—Koch Qatar and the Bates and Reiman wells.

Plaintiffs filed a motion for leave to amend paragraphs twenty-two and twenty-three of their complaint so as to plead with more specificity their allegations that defendants engaged in a scheme to understate the value of Koch Industries. As amended, paragraph twenty-two delineated several examples of fraudulent misrepresentations, such as the Pine Bend refining capacity, the oil reserves in Pouce Coupe and Giltedge, the leaseholdings in Cold Lake, the equity value of ABKO subsidiaries, and the understated value of various assets because of certain financial and accounting policies and practices. In subsection (f) of this paragraph, plaintiffs alleged that these were "mere examples of defendants' scheme," and that access to defendants' records "would reveal other omissions, discrepancies and inaccuracies in the relevant financial statements of Koch Industries...."

The court denied plaintiffs' motion for leave to amend in an order filed February 19, 1987. The court found plaintiffs' motion to be untimely, as they offered no justification for waiting until November of 1986 to request leave to amend. On the record before it, the court found no reason why plaintiffs should not have known of these new claims prior to their other amended complaint or even their original complaint. The court also found that the claim of a general "scheme" enabled plaintiffs "to discover and assert against defendants any number of wrongs which are currently unknown" and that such a claim imposed an unreasonable and unworkable burden upon defendants. The court concluded "that plaintiffs' repeated assertion in this manner of a 'scheme,' plaintiffs' failure to include known facts in its previous amended complaint, and plaintiffs' delay in asserting them until after partial summary judgment was granted demonstrate[d] undue delay by plaintiffs, and prejudice to defendants." (Dk. # 117, p. 7).

On May 19, 1987, plaintiff petitioned the Tenth Circuit for a writ of mandamus compelling this court to vacate the above orders. The Tenth Circuit denied the petition noting that an eventual appeal was the proper avenue of relief.

Under the impression that this court considered all other assets of Koch Industries,

besides the three originally pled, to be outside the scope of this action, plaintiffs initiated a separate case before Judge Saffels in Kansas City. This action was dismissed on May 19, 1988, as an improper effort to split causes of actions arising from a single wrong which should be prosecuted in a single action. *Oxbow Energy, Inc. v. Koch Industries, Inc.*, 686 F.Supp. 278 (D.Kan. 1988). This decision has been appealed to the Tenth Circuit. The proposed second amended complaint in the present case incorporates all of the claims filed in the action before Judge Saffels.

Charles and David Koch filed an action against William Koch requesting specific performance of a personal agreement between them for the division of certain real estate and a gold coin collection. In July of 1988, William Koch filed in that case assigned to Judge Kelly a counterclaim alleging the same claims and theories as sought in Judge Saffels' court. On November 4, 1988, Judge Kelly dismissed the counterclaim without prejudice for the reasons stated by Judge Saffels and for its lack of a necessary relationship to plaintiffs' claims.

After completing this circuitous route of litigation, plaintiffs ask this court for leave to file a second amended complaint. The proposed amendments join as plaintiffs all complaining owners who sold their shares in the 1983 Agreement, delete all class allegations, add two individuals as defendants, and add "all of the plaintiffs' remaining claims against defendants arising from the Stock Purchase and Sale Agreement." (Dk. # 144, p. 1). Defendants oppose this motion characterizing it as merely the plaintiffs' fourth attempt to circumvent this court's previous order denying leave to amend.

■ Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). While a matter resting within the court's sound discretion, leave cannot be denied without offering any justification. *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387

(10th Cir.1987). Factors relevant in deciding a motion for leave to amend include: "whether the amendment will result in undue prejudice, whether the request was unduly and inextricably delayed, was offered in good faith, or that the party had had sufficient opportunity to state a claim and failed." *State Distributors, Inc. v. Glenmore Distilleries*, 738 F.2d 405, 416 (10th Cir.1984); *see also Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230. For the purpose of quick reference, the four relevant factors are undue prejudice to the other party, undue delay, bad faith, and futility of amendment. In exercising its discretion, the court must be mindful of the spirit of the Federal Rules of Civil Procedure to encourage decisions on the merits rather than on mere technicalities. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987); *see Foman*, 371 U.S. at 181, 83 S.Ct. at 229.

The present motion necessarily entails a reconsideration of the court's order of February 19, 1987, in light of additional circumstances and affidavits. Upon review of the new affidavits of William I. Koch, Robert Martin and Arthur Liman, the court's previous comments regarding undue delay are particularly vulnerable to reconsideration. To the extent relevant in weighing the factors involved in deciding plaintiffs' most recent motion for leave to amend, the court will review its reasoning from the prior decision denying plaintiffs' leave to amend.

*Undue Prejudice*

■ The usual liberality in granting leave to amend is curbed when the amendment would cause the opposing party undue prejudice. *DCD Programs*, 833 F.2d at 186. Under Rule 15, prejudice " 'means undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the other party.' " *Federal Deposit Ins. Corp. v. Berr*, 643 F.Supp. 357, 359 (D.Kan.1986) (quoting *Deakyne v. Commissioners of Lewes*, 416 F.2d 290, 300 (3rd Cir.1969)). Any amendment invariably causes some "practical prejudice," but leave to amend is not denied unless the amendment would

work an injustice to the defendants. *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971); *see also UNR Industries, Inc. v. Continental Ins. Co.*, 623 F.Supp. 1319, 1325 n. 2 (D.Ill.1985). The burden of showing prejudice rests with the party opposing the amendment. *Berr*, 643 F.Supp. at 359.

Defendants argue they would be greatly prejudiced if after four years of pending litigation the plaintiffs were allowed to assert new claims and add new plaintiffs and defendants. Defendants estimate these new claims would delay the case another three to five years just for the completion of discovery. Defendants also point to plaintiffs' unwillingness to proceed with discovery and trial of the only remaining issue in the case as now framed. Plaintiffs respond that as the necessary facts were revealed to them through discovery the defendants have been kept abreast of those proposed claims and allegations deriving from plaintiffs' discoveries. Plaintiffs contend defendants cannot assert any prejudice from delay, since it was upon their efforts that discovery was stayed, amendments were denied, and other actions were dismissed. Plaintiffs finally explain that beyond the document depositions of the banks, the only discovery taken in all of their litigation efforts concerns the Capa Madison matter.

■ The addition of new parties and new claims may complicate proceedings. *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 752 (10th Cir.1975). A change in theory alone is not an adequate ground for denying an amendment, unless it also causes prejudice to the defendants. *Ward Electronics Service v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987).

The second scheduling order in this case directs that discovery will be completed on October 2, 1989, and sets the final pretrial conference for November 2, 1989. The court believes the filing of the second amended complaint would make these dates unattainable and would substantially delay the trial of this case. Nevertheless, the court agrees that defendants have successfully prevented any discovery except for the document depositions and the mat-

ters relevant to the Capa Madison unit and that defendants have not been misled by plaintiffs' intentions to litigate their claims regarding the true value of their stock as of June 1983.

The court does believe that plaintiffs' RICO claims represent a substantial departure from their previously represented intentions and encompass more issues than could have ever been reasonably anticipated from the original complaint. The sheer diachronic breadth of plaintiffs' RICO allegations unmistakably reveal the plaintiffs' wishes through this claim—to conduct a comprehensive and thorough investigation of the business practices of Koch Industries and its management over the last twenty years. After nearly four years of history to this case, it would be ostensibly an overwhelming burden, as well as unduly prejudicial, to subject defendants to discovery on these RICO claims. In effect, defendants would be required to defend almost an entirely new case. *See generally A.E. v. Mitchell*, 724 F.2d 864, 868 (10th Cir.1983); *Sopis v. Tsagaris*, 11 Fed.R. Serv.3d 1131, 1134, 1988 WL 64802 (S.D.N. Y.1988).

*Undue Delay*

■ It is within the court's discretion to deny leave to amend for untimeliness or undue delay without a showing of prejudice to the other party. *First City Bank v. Air Capitol Aircraft Sales*, 820 F.2d 1127, 1137 (10th Cir.1987). *But see R.E.B. Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir.1975) ("Lateness does not of itself justify the denial of the amendment."). Courts look to the reasons for the delay and the presence of excusable neglect or not. *Gates Learjet*, 823 F.2d at 387. Leave to amend may be denied "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Id.* (citations omitted). Stated another way, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *State Dis-*

*tributors,* 738 F.2d at 416 (citation omitted).

■ Upon the affidavits of William Koch and Robert Martin, the court would agree that the plaintiffs' delay from June 1985 until November 1986 was not undue. There is no undue delay in seeking leave to amend if plaintiffs acquire knowledge of the facts behind the new claim only through recent discovery and after conducting a reasonable investigation of that information. *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir.1987). Plaintiffs' decision to wait until this court's ruling on defendants' motion to dismiss before presenting the amendment did not cause any undue delay, *see generally Textor v. Board of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1391 (7th Cir.1983); and was made in reasonable reliance on its fraud allegations. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 599 (5th Cir.1981). Plaintiffs acted with "reasonable alacrity" in seeking leave to amend after the court's order of November 5, 1986. *Yellow Bus Lines, Inc. v. Local Union 639,* 839 F.2d 782, 795 (D.C.Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988). Despite these previous statements, the court still considers its decision of February 1987 to deny leave to amend to be correct because of plaintiffs' efforts to evade Rule 9(b) requirements through allegations of a general "scheme." Some of the court's language in that order is unfortunately too broad and could be read as disallowing any amended claims based upon misrepresentations of value regarding other assets. Such a broad ruling could otherwise be viewed as an abuse of discretion in that plaintiffs had been denied the opportunity to replead claims which had been dismissed on Rule 9(b) grounds. *Devaney v. Chester,* 813 F.2d 566, 569 (2nd Cir.1987).

After the passing of nearly four years, plaintiffs for the first time in this court allege a RICO claim. The pattern allegations to this claim specifically refer to at least nine different racketeering activities dating from 1969 to the present. Of the nine, only two of the alleged racketeering activities were not known to plaintiffs at the time they filed the original complaint in June of 1985. Nothing prevented plaintiffs from advancing a RICO claim on the seven alleged racketeering activities. It is apparent that plaintiffs resorted to a RICO claim only after the court twice refused to allow plaintiffs to pursue discovery and litigation on the claim of a general "scheme" of fraud. One court has observed:

> [A] party who inexcusably delays in seeking leave to amend is in effect holding back and only playing his cards when necessary to avoid defeat. That approach is contrary to the policy of the federal rules in favor of "the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

*UNR Industries, Inc. v. Continental Ins. Co.,* 623 F.Supp. 1319, 1325 (D.Ill.1985). This court finds that plaintiffs have unduly delayed in playing their RICO card. *See Johnsen v. Rogers,* 551 F.Supp. 281, 284 (D.Cal.1982).

*Bad Faith*

■ An amendment adding causes of action will be denied if sought in bad faith. *DCD Programs,* 833 F.2d at 186. The movant's bad faith must be apparent from evidence of record. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *DCD Programs,* 833 F.2d at 187. In *Dussouy,* the Fifth Circuit addressed a relevant situation where a finding of bad faith would be warranted:

> [A]wareness of facts and failure to include them in the complaint might give rise to the inference that the plaintiff was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate. (citations omitted).

660 F.2d at 599. From the circumstances of the present case, the court reasonably infers plaintiffs' effort to have this court entertain "theories seriatim" which would permit them to fulfill their apparent wish

of conducting open-ended discovery of Koch Industries' business practices for the last twenty years. Judge Saffels observed similar tactical maneuvering by plaintiffs in the action filed in his court:

> Finally, the court believes there is at least some indication that the new plaintiffs here chose to stay out of the 1985 action solely in order to provide an opportunity to bring a new action if the group of selling stockholders were dissatisfied with any of Judge Crow's rulings. Once again, the court cannot condone such tactics.

686 F.Supp. at 283. This court does not stand alone in questioning the motives behind some of the litigation strategies.

After the court found plaintiffs' allegations of a scheme to defraud insufficient under Rule 9(b), plaintiffs merely attempted to amend the allegation of a scheme by adding a few examples. After this attempt failed, plaintiffs once again advanced allegations of a scheme to defraud but now in the context of a RICO claim. Through this vehicle, plaintiffs are able now to discover and litigate issues which they settled and released after bringing the 1982 *Koch* action. Furthermore, plaintiffs can pursue discovery in search of fraud and add at will its findings as allegations of a pattern of racketeering activity. The spirit of the federal rules is violated where fraud is the primary basis of the action and the plaintiff is allowed to file suit first and subsequently to search for a cause of action of fraud. *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.1985).

It is no secret that the courts have become the stage for the unraveling of a family. There are indications that harbored ill feelings have created and fueled expensive and time-consuming litigation in the courts, as well as, much publicized proceedings within other branches of government. While no person or entity should be denied its day in court, neither should the courts' important discovery tools and limited resources be arrogated by those who apparently wish to conduct their own grand jury investigation of a business' practices over the last twenty years on matters tangential, at best, to the wrongful acts allegedly causing them injury. This case is not the court's only responsibility and to permit plaintiffs now the opportunity to assert RICO claims of their proposed breadth would unleash a Hydra that would require from the court nothing short of a herculean effort in time and attention to even maintain a semblance of control over it.

The court does not find that plaintiffs will have suffered injustice and been denied due process if unable to litigate their RICO claims. Plaintiffs' so-called "catch–22" was not caused by this court's improper refusal to entertain all claims arising from a single wrong but by plaintiffs' own failure to abide by the spirit of the federal rules to pursue its litigation in a timely and good faith manner. Without RICO claims, plaintiffs' rights to fair and just compensation for wrongs suffered are not unduly prejudiced. Plaintiffs' alleged injuries are, for the most part, identical to those pled in its other claims. RICO may permit the plaintiffs to recover treble damages, but plaintiffs may also recover punitive damages under some of its other claims.

■ Based upon plaintiffs' undue delay and bad faith in bringing their RICO claims and the undue prejudice which would result to defendants, the court denies plaintiffs' motion for leave to amend as to the RICO counts VI and VII. The deletion of these counts may render some of the general allegations irrelevant, and the court would expect those would also be deleted. As to all other amendments proposed by the second amended complaint, the court grants plaintiffs' motion. The court's ruling is made in partial reliance upon the fact that the plaintiffs' second amended complaint accomplishes, in plaintiffs' words, the adding of "all of the plaintiffs' remaining claims against defendants arising from the Stock Purchase and Sale Agreement." (Dk. # 144, p. 1).

IT IS THEREFORE ORDERED that the plaintiffs' motion for leave to file a second amended complaint is granted in part, and the second amended complaint should be filed after making the necessary changes so ordered herein.