**Bradley MURRAY, Plaintiff,**

v.

**Helen SEVIER, Defendant.**

**Civ. A. No. 92–1073–MLB.**

United States District Court,
D. Kansas.

June 21, 1993.

Randall E. Fisher, Mark B. Hutton, Michaud, Hutton & Bradshaw, Wichita, KS, Robert Blakey, University of Notre Dame Law School, Notre Dame, IN, for plaintiff.

Diane S. Worth, Dennis M. Feeney, Morris, Laing, Evans, Brock & Kennedy, Chtd., Wichita, KS, Jack H. Watson, Jr., J. Allen Maines, Eric Lang, Long, Aldridge & Norman, Atlanta, GA, William Robert Martin, Richard K. Thompson, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, Lee H. Zell, Patricia Clotfelter, Lisa A. Wright, Berkowitz, Lefkovits, Isom & Kushner, Patricia T. Mandt, Bradley, Arant, Rose & White, Birmingham, AL, for defendant.

## ORDER

BELOT, District Judge.

Before the court are the following:

1. Plaintiff Bradley Murray's motion for reconsideration of this court's January 27, 1993 memorandum and order of dismissal (Doc. 141). 145 F.R.D. 563.

2. Defendant Helen Sevier and proposed defendants B.A.S.S., Inc., Jemison Investment Company, Inc., Karl L. Dabbs and James D. Davis' memorandum in opposition to plaintiff's motion for reconsideration (Doc. 144).

3. Ray W. Scott, Jr.'s memorandum in opposition to plaintiff's motion for reconsideration (Doc. 143).

4. Plaintiff's reply to defendants Sevier, et al.'s memorandum in opposition (Doc. 149).

5. Plaintiff's reply to Scott's memorandum in opposition (Doc. 150).

6. Ray W. Scott, Jr.'s motion to alter or amend judgment (Doc. 138).

7. Plaintiff's memorandum in opposition to Scott's motion to alter or amend judgment (Doc. 146).

8. Scott's reply (Doc. 151).

By its memorandum and order of dismissal of January 27, 1993 (Doc. 136), the court dismissed plaintiff Murray's original and second amended complaints and denied his motion for leave to file a third amended complaint.[1] The court also denied plaintiff Murray's motion to certify this case as a class action. The court found, in substance, that plaintiff Murray was attempting by his various complaints to state a derivative action under Rule 23.1, Fed.R.Civ.P., but that his allegations did not meet the requirements of

---

1. Chief Judge Kelly of this court dismissed a first amended complaint purporting to list both plaintiff Murray and plaintiff Larry Neff.

Rule 23.1. The court's ruling operated as a complete dismissal of all of plaintiff's claims.

 The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been attained through the exercise of due diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed is likewise inappropriate. *Comeau v. Rupp,* 810 F.Supp. 1172 (D.Kan.1992).

Plaintiff's motion to reconsider proceeds on alternative grounds. Plaintiff first attempts to salvage his third amended complaint, claiming that it stated direct, not derivative, claims. In the alternative, plaintiff seeks leave to file a fourth amended complaint to assert "direct and primary claims belonging to all B.A.S.S. members in common as a class."

### *Motion to Reconsider the Third Amended Complaint*

 Plaintiff concedes that certain language of the third amended complaint "might be construed as seeking derivative and not direct class relief" but nevertheless urges the court to find that the complaint really did not state derivative claims. Plaintiff's counsel states:

In drafting the third amended complaint, plaintiff's counsel intended all references to "B.A.S.S." or the 'society' to reflect the substantive law such that any construction of the complaint would equate the phrases of 'B.A.S.S.' or the 'society' to mean simply

the 518,000–plus individuals who believe themselves to be 'B.A.S.S.' members

and

. . . the language of the complaints suggesting that the relief sought was not for the pecuniary benefit of members personally, but for the Society *should be interpreted to mean:* If B.A.S.S. members recover all their commonly owned assets, there will not be a pro rata disbursement to each individual member; rather all common assets recovered by the members will be applied to the members' association purposes. (emphasis supplied)

These statements do not qualify as an affirmative showing that the court misapprehended plaintiff's position or the facts or applicable law. Rather, they are an acknowledgment that the plaintiff misapprehended his own position.

A complaint is supposed to be a short and plain statement.[2] Rule 8(a), Fed.R.Civ.P. When the drafter of the complaint is reduced to defending it by "what I meant to say" explanations coupled with complicated legal arguments, the complaint does not meet the definition of a "plain statement." If the court allowed plaintiff's third amended complaint to stand, this case would further degenerate and the court would be faced with difficult, unnecessary and never ending disputes regarding the fundamental issue of what plaintiff actually is claiming.[3] To allow this case to go forward on the third amended complaint would be a violation of the admonition of present Rule 1, Fed.R.Civ.P., that the rules are to be construed to secure the just, speedy and inexpensive determination of every action.[4]

Therefore, plaintiff's motion for reconsideration of the court's order denying leave to file a third amended complaint is overruled and the court will turn to the plaintiff's alternative motion for leave to file a fourth amended complaint.

---

**2.** The third amended complaint is sixty-six pages long, *not* counting exhibits. The first and second amended complaints were similarly lengthy.

**3.** The court is especially reluctant to enter this quagmire in view of the demonstrated mutual lack of respect and civility between counsel.

**4.** Proposed Rule 1 adds that the rules be *administered* to secure the just, speedy and inexpensive determination of every action. This provides further support for the court's decision.

## Motion for Leave to File a Fourth Amended Complaint

Plaintiff's alternative request is for leave to file a fourth amended complaint. The court already has discussed in its January 27 order the standards regarding applications for leave to amend (pp. 8–10). Plaintiff has not attached a proposed fourth amended complaint but that requirement will be excused because the court limited motions for reconsideration to twenty-five pages, including exhibits.

It is plain from plaintiff's motion and counsel's affidavit that a fourth amended complaint would delete all allegations which could be construed as asserting derivative claims in favor of asserting direct claims by plaintiff, individually and on behalf of all other members who believe themselves to be "B.A.S.S." members. The fourth amended complaint also would assert RICO claims pursuant to 18 U.S.C. § 1961 *et seq.*

## RICO Claims

In *Koch v. Koch Industries,* 127 F.R.D. 206 (D.Kan.1989) Judge Crow was faced with a request to add a RICO claim to an on-going suit. Judge Crow identified four factors relevant to a determination of whether to allow the amendment: undue prejudice to the other party, undue delay, bad faith and futility of the amendment. Defendants here rely on the elements of undue delay and bad faith, arguing that plaintiff has held back his RICO claim as a tactical maneuver notwithstanding his announcement of facts giving rise to a RICO claim shortly after filing his original complaint.

With respect to the element of undue delay, Judge Crow observed:

> It is within the court's discretion to deny leave to amend for untimeliness or undue delay without a showing of prejudice to the other party. *First City Bank v. Air Capitol Aircraft Sales,* 820 F.2d 1127, 1137 (10th Cir.1987). *But see R.E.B. Inc. v. Ralston Purina Co.,* 525 F.2d 749, 751 (10th Cir.1975) ('Lateness does not of itself justify the denial of the amendment.') Courts look to the reasons for the delay and the presence of excusable neglect or not. [*Federal Ins. Co.,*] *Gates Learjet*

> [*Corp.*] 823 F.2d [383] at 387 [ (10th Cir. 1987) ]. Leave to amend may be denied 'where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.' *Id.* (citations omitted). Stated another way, '[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.' *State Distributors [Inc., v. Glenmore Distilleries Co.,]* 738 F.2d [405] at 416 [ (10th Cir.1984) ] (citation omitted).

127 F.R.D. at 210–11.

With respect to the element of bad faith, Judge Crow noted:

> An amendment adding causes of action will be denied if sought in bad faith. *DCD Programs, [Ltd. v. Leighton]* 833 F.2d [183] at 186 [(9th Cir.1987) ]. The movant's bad faith must be apparent from evidence of record. See *Foman [v. Davis ],* 371 U.S. [178] at 182, 83 S.Ct. [227] at 230 [9 L.Ed.2d 222 (1962) ]; *DCD Programs,* 833 F.2d at 187. In *Dussouy [v. Gulf Coast Inv. Corp.,* 660 F.2d 594 (5th Cir.1991) ],* the Fifth Circuit addressed a relevant situation where a finding of bad faith would be warranted:

>> [A]wareness of facts and failure to include them in the complaint might give rise to the inference that the plaintiff was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate. (citations omitted).

127 F.R.D. at 211.

By letter dated March 20, 1992 to "all defense counsel of record" plaintiff's counsel stated:

> Counsel for defendants should be aware of the serious implications of this lawsuit. There may be criminal implications as well. If plaintiffs' allegations are true, then nu-

merous federal and state criminal laws may apply, including but not limited to, 18 U.S.C. § 1961 *et seq.*, (Criminal RICO) . . .

This letter was written less than two months after this case was filed and a year (and more) before the second and third amended complaints were unveiled.[5] Plaintiff's counsel suggests that when the letter was written, he only "suspected" RICO violations but did not have a sufficient basis to allege them. Counsel's explanation is:

> Pursuant to 18 U.S.C. § 1963(1)(6)B and 21 U.S.C. § 853(m)(6)B; *United States v. Monsanto*, [491 U.S. 600, 105 L.Ed.2d 512] 109 S.Ct. 2657 (1989); and *Caplin & Drysdale v. United States* [491 U.S. 617, 105 L.Ed.2d 528] 109 S.Ct. 2646 (1989), it is incumbent upon plaintiff's counsel—even if armed with just a suspicion of racketeering—to protect all B.A.S.S. property by notifying those receiving money from defendants that said receipts may ultimately be subject to forfeiture. U.S. Attorneys routinely send such notification letters to attorneys representing· clients merely suspected of racketeering but not yet indicted.

(Plaintiff's Reply, Doc. 149 at p. 9 n. 15).

There is nothing in these statutes[6] or cases to support this proposition. Moreover, if U.S. Attorneys are "routinely" sending such notification letters, they are violating Section 9–111.530 of the United States Attorney's Manual (October 1, 1990) which provides:

> There may be cases where there are reasonable grounds to believe that all of a defendant's assets are subject to forfeiture. Under these guidelines, however, the only assets which an attorney conclusively would be held to have actual knowledge of forfeitability are those specifically named in the indictment or subject to a restraining order or civil forfeiture proceeding. There would have to be some evidence in addition to the forfeiture allegations to establish actual knowledge of the forfeitability of those assets which are not specifically described or subject to restraint. *See*

U.S.A.M. 9–111.510, *supra.* As a result, it may be extremely difficult in cases where all of a defendant's illegitimate assets have not been discovered to prove actual knowledge, even though there are grounds to believe no legitimate assets exist. Although this may limit the cases in which actual knowledge may be established, *the Department believes it is inappropriate to give written notice to an attorney that a particular asset or that all assets belonging to a defendant are from an illegitimate source or subject to forfeiture simply to meet the requirements of actual knowledge imposed by these guidelines.*

Sending written notice of the forfeitability of assets that are not specifically described or under restraint no doubt would be attacked as impermissibly interfering with the qualified right of counsel of choice. The argument could be made that if the notice is not based upon a probable cause determination that the assets are subject to forfeiture, it was sent only to harass the attorney or to cause him/her to abandon the case and not because the asset legitimately is subject to forfeiture. Thus, the government may be sidetracked into prolonged litigation which is only ancillary to the criminal charges.

*Additionally, if there is probable cause that a particular asset or all of a defendants assets are forfeitable, the written notice is unnecessary.* The assets which are known to the government at the time of indictment can be specifically described in the forfeiture count. Additional assets discovered after return of the indictment can be included in a superseding indictment or can be subjected to a restraining order by making an appropriate showing to the court. Therefore, actual knowledge will be established by the restraining order or the specific description in the indictment.

Another reason cautioning against written notice is that if it is not routinely and uniformly given, it will be argued that the

---

**5.** March 20 and August 25, 1992, respectively.

**6.** Both statutes require the petitioner (here, defendants' lawyers) to be a bona fide purchaser of the property subject to forfeiture. Plaintiff offers no explanation how defendants' lawyers could fit within that definition.

government is targeting certain attorneys and attempting to prevent them from representing criminal defendants in certain cases. *The Department does not have or endorse such a policy and believes it is unwise to create even an appearance that such a policy exists.*

The limitation herein does not apply to written notice of the government's intent to seek forfeiture of an asset when it has been concluded that an attorney has actual knowledge—based on facts and information other than that contained in the written notice—that the asset is subject to forfeiture. *However, where the criminal case giving rise to the forfeiture has not been concluded, such notice should be given only in extraordinary cases and may not be given without the approval of the Assistant Attorney General, Criminal Division.* (emphasis supplied)

The court cannot accept counsel's inference that when he wrote his letter, he did *not* have facts sufficient to plead a RICO claim.

Counsel's explanation that he could not plead RICO violations before conducting "formal discovery" is equally suspect. Counsel does not outline the "formal discovery" he would need to conduct before he would feel comfortable making a RICO claim. Moreover, as will be seen, *infra*, the facts which counsel *now* says will support a RICO claim did not come from "formal discovery" (assuming "formal discovery" means facts learned exclusively through discovery). Finally, the length and detail of the various complaints belie any suggestion that plaintiff's claims are discovery-dependent.

It is undisputed that this case arose out of an extensive investigation and attempted expose of defendants' alleged activities by a would-be author and his lawyer friend.[7] The investigation has been liberally used as the basis for the highly detailed allegations of the various complaints without any apparent concern that "formal discovery" to support the allegations has not been conducted. Indeed, many of the various pleadings previously filed by plaintiff take the position that everything he has alleged already has been con-

firmed by the investigation as proven, irrefutable facts and that anyone who would deny the allegations is a liar, or worse. Given what has already transpired in this case, the court is hard-pressed to believe that counsel would feel constrained by any lack of "formal discovery" to make RICO claims.

Plaintiff's last argument is that facts giving rise to RICO claims were not discovered until early 1993.

Those newly discovered facts include misrepresenting to U.S. government officials that B.A.S.S. (the Society, and not the "Inc.") was "a nonprofit association" [formed for the purposes of conservation, promotion of the sport and youth fishing]. One U.S. government official recently told plaintiff's counsel *that if B.A.S.S. is not nonprofit,* then government officials "up and down the ladder" have been duped. Many of these misrepresentations occurred by use of the U.S. mails, which may be a predicate RICO act.

Moreover, plaintiff's fourth amended complaint will assert new facts concerning obstruction of justice (*i.e.,* tampering with witnesses, suppression of evidence) presented to this Court on January 21, 1993. *Obstruction of justice can constitute predicate acts under RICO.*

Allegations regarding misrepresentations of B.A.S.S. as a nonprofit association were made in the original complaint and have been repeated in the later complaints. The various complaints allege that the misrepresentations were made in *Bassmaster* magazine and a "handbook" provided to the 518,000 members of the Bass Anglers Sportsmen Society. It is obvious that these publications have been mailed to members. There is nothing "newly discovered" about these allegations. If they are sufficient now to support a RICO claim, they were sufficient when the earlier complaints were made. Counsel has cited no authority that misrepresentation to and gratuitous comments by government officials who are not part of the alleged criminal enterprise are elements of a RICO claim based on mail fraud.

---

**7.** Beau Cabell and Paul Weeks, respectively.

■ Plaintiff's obstruction of justice claim is based upon an allegation that sometime after July 1992, defendants hired as non-testifying consultant witnesses two lawyers with whom Beau Cabell, the author of the expose, had earlier conferred and with whom Cabell allegedly had formed an attorney-client relationship. In a 50 page motion filed in January 1993, (Doc. 133), plaintiff contended that the two attorneys could "prove the truth of Cabell's investigation and Scott's fraud." Plaintiff urged this court to find that discovery from these lawyers was not prevented by Rule 26(b)(4)(B), Fed.R.Civ.P.

The court accepts that obstruction of justice is a racketeering activity recognized by 18 U.S.C. § 1961(1)(A). Because of the rule of liberality regarding amendments, *State Distributors, Inc. v. Glenmore Distilleries Company*, 738 F.2d 405, 416 (10th Cir.1984), the court will allow plaintiffs to file a fourth amended complaint setting forth a RICO claim *limited to the hiring of the two lawyers*. The court does so because it does not appear that plaintiff knew that defendants had hired the lawyers until October 1992, after the third amended complaint was prepared.

The court will not permit any other RICO claim, however. The court finds that plaintiff knew or should have known of the facts giving rise to the only other RICO claim he has identified, the alleged mail fraud, and his failure to make a RICO claim based thereon constitutes undue delay which is not excused by counsel's unsupported statements that misrepresentations may have been made to "government officials."

### Direct Claims

■ The court has substantial reservations regarding plaintiff's ability to maintain direct claims by plaintiff and other "B.A.S.S." members. Unless plaintiff is able to state a viable RICO claim sufficient to confer federal question jurisdiction on this court, *see* 28 U.S.C. § 1331; 18 U.S.C. § 1965(a), it would appear that direct state claims will have to be based on diversity of citizenship, and the court questions whether any plaintiff can meet the amount in controversy requirement, even if the case is *plead* as a class action.

*See Zahn v. International Paper Company*, 414 U.S. 291, 94 S.Ct. 505, L.Ed.2d 511 (1973). Moreover, based on previously-filed motions to dismiss, jurisdiction over at least some of the defendants is questionable. Finally, assuming this court has jurisdiction, venue may be more appropriate elsewhere.

These and perhaps other issues will be best addressed if a fourth amended complaint is before the court. However, in view of this case's troubled past, the court believes that uncontrolled allowance of an amended pleading would be unwise. Therefore, the parties shall strictly adhere to the following procedures:

1. On or before July 30, 1993, plaintiff shall file an amended motion for leave to file a fourth amended complaint. The motion shall not exceed 25 pages, including all attachments and exhibits except the amended pleading itself. The amended pleading shall be limited to the direct state claim and RICO claim discussed in this order.

2. On or before August 23, 1993, any defendant named in the fourth amended complaint who desires to do so may file a response to the amended motion. The responses shall not exceed 25 pages, including all attachments and exhibits. The court encourages defendants' counsel to confer with a view to filing non-repetitious pleadings.

3. On or before September 10, 1993, plaintiff may file his reply, which shall not exceed 15 pages, including all attachments and exhibits.

4. No discovery shall be undertaken except with leave of this court upon proper motion and any discovery shall be strictly limited to the issues raised in the motion for leave to amend and any responses thereto. Motions and responses regarding discovery shall not exceed 10 pages, including all attachments and exhibits. All responses to motions regarding discovery shall be *filed*, not merely served, within 10 days of receipt of the original motion. Replies, if any, shall be *filed* within 5 days of receipt of the response. Before filing any motion for leave to take discovery by deposition, counsel shall confer regarding available dates for counsel and witnesses.

5. All motions not ruled upon herein shall be taken under advisement and will be considered in connection with the amended motion for leave to file a fourth amended complaint.

IT IS SO ORDERED.