**Peggy DEGHAND, Plaintiff,**

v.

**WAL–MART STORES, INC., Defendant.**

**No. 94–4172–SAC.**

United States District Court, D. Kansas.

Oct. 12, 1995.

Amy C. Bixler, Alan G. Warner, Topeka, KS, for plaintiff.

Mark D. Katz, Sherman, Taff & Bangert, P.C., Leawood, KS, Steven D. Steinhilber, Sherman, Taff & Bangert, P.C., Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the plaintiff's motion to review (Dk. 56 and 58) the magistrate judge's order (Dk. 54) filed August 4, 1995. The magistrate judge in that order denied the plaintiff's second motion to amend her complaint. The plaintiff sought to add Lori Falkenstein as an individual defendant on claims of defamation and intentional infliction of emotional distress and to add the same two claims against the defendant Wal–Mart Stores, Inc. ("Wal–Mart"). The magistrate judge denied the motion to amend for being untimely under the scheduling order and for proposing futile amendments. The plaintiff now seeks review of that portion of the magistrate judge's ruling which denied her leave to add the two claims against Wal–Mart. The matter is ripe for decision as the time for filing an opposition has passed without Wal–Mart filing one.

■ The plaintiff asks the district court to conduct a *de novo* review of the magistrate judge's ruling. The plaintiff offers no arguments or authorities for applying a *de novo* standard. A district court uses a clearly erroneous or contrary to law standard to review a magistrate judge's ruling on nondispositive pretrial matters. 28 U.S.C. § 636(b)(1)(A); *Resolution Trust v. Fidelity & Deposit Co. of Maryland,* 885 F.Supp. 228, 229 (D.Kan.1995). When a magistrate judge decides a motion for leave to file an amended complaint, the federal district courts in Kansas review the order using a clearly erroneous standard. *Resolution Trust,* 885 F.Supp. at 229; *Denmon v. Runyon,* 151 F.R.D. 404, 405 (D.Kan.1993); *Zurn Constructors, Inc. v. B.F. Goodrich Co.,* 746 F.Supp. 1051, 1055 (D.Kan.1990). The clearly erroneous standard means the district court must affirm the magistrate judge's order unless the district court has the definite and firm conviction from all the evidence that error has occurred. *Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1461–62 (10th Cir.1988).

■ Because the plaintiff sought leave to amend her complaint after the deadline established in the pretrial scheduling order, Rule 16 of the Federal Rules of Civil Procedure is the plaintiff's first hurdle. *Tschantz v. McCann,* 160 F.R.D. 568, 571 (N.D.Ind. 1995); *see Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607–08 (9th Cir. 1992) ("Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled."); *see, e.g., SIL–FLO, Inc. v. SFHC, Inc.,* 917 F.2d 1507, 1518 (10th Cir.1990). Rule 16(b) provides that: "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." "The 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Tschantz,* 160 F.R.D. at 571 (citing *Johnson,* 975 F.2d at 609). The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines. *Pfeiffer v. Eagle Mfg. Co.,* 137 F.R.D. 352, 355 (D.Kan. 1991); Fed.R.Civ.P. 16 advisory committee note to 1983 Amendment. "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson,* 975 F.2d at 609 (citations omitted). The lack of prejudice to the nonmovant does not show "good cause." *Tschantz,* 160 F.R.D. at 571; *Amcast Indus. Corp. v. Detrex Corp.,* 132 F.R.D. 213, 218 (N.D.Ind.1990). The party seeking an extension is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline. *Putnam v. Morris,* 833 F.2d 903, 905 (10th Cir.1987). While a scheduling order " 'is not a frivolous piece of paper, idly entered,' which can be cavalierly disregarded by counsel without peril," *Johnson,* 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.,* 108 F.R.D. 138, 141 (D.Me.1985)), "rigid adherence to the ... scheduling order is not advisable," *SIL–FLO, Inc.,* 917 F.2d at 1519 (citation omitted).

■ Rule 15 is the next hurdle for the plaintiff. Leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Though courts are expected to heed this mandate, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the matter is still committed to the court's sound discretion, *Federal Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir.1987). Courts exercise that discretion mindful that the federal rules are designed to encourage decisions on the merits rather than on mere technicalities. *Koch v. Koch Industries,* 127 F.R.D. 206, 209 (D.Kan. 1989). " 'Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses,' but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.' " *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994) (quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 469 (5th Cir.1967) (citation omitted)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993)).

■ In the Tenth Circuit, courts may deny leave for untimeliness or undue delay without a showing of prejudice to the opposing party. *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1462 (10th Cir.1991); *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990); *see Frank v. U.S. West, Inc.,* 3 F.3d at 1365. Courts evaluate the reasons for the delay and assess whether they amount to excusable neglect. *Gates Learjet Corp.,* 823 F.2d at 387. Untimeliness is sufficient cause for denying leave, especially when the movant offers no adequate explanation for the delay. *Frank,* 3 F.3d at 1365–66. Courts may deny leave if the movant " 'knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint.' " *Pallottino v. City of Rio Rancho,* 31 F.3d at 1027 (quoting *State Distributors, Inc. v. Glenmore Distilleries,* 738 F.2d 405, 416 (10th Cir.1984) (citations omitted)). The

moving party has not unduly delayed in seeking leave when knowledge of the facts behind the new claim is gained only after recent discovery and then confirmed after a reasonable investigation. *Koch,* 127 F.R.D. at 211; *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274, 279 (4th Cir.1987).

■ Ms. Deghand filed her suit on September 20, 1994. (Dk. 1). Wal–Mart filed its answer on November 15, 1994. (Dk. 5). The scheduling order was filed on December 9, 1994, and it set a deadline of January 6, 1995, for the filing of any motions to amend the pleadings or to add parties. (Dk. 6). On March 28, 1995, almost twelve weeks after the deadline for filing motions to amend expired, Ms. Deghand filed a second motion to amend. (Dk. 32). Ms. Deghand sought to add Lori Falkenstein as an individual defendant on claims of defamation and intentional infliction of emotional distress and to add the same two claims against Wal–Mart.

The common factual basis to these requested amendments is a letter dated September 29, 1993, and written by Lori Falkenstein. At the time she wrote the letter, Ms. Falkenstein apparently was an employee of Wal–Mart. In the letter, Ms. Falkenstein offers opinions and recounts incidents concerning Ms. Deghand's violation of Wal–Mart policies and her inadequate performance of supervisory duties. At the request of Wal–Mart management, Ms. Falkenstein wrote this letter and submitted it to them for their consideration and use. Members of Wal–Mart's management have testified that this letter was important in their decision to demote Ms. Deghand in October of 1993.

Ms. Deghand has good cause or excusable neglect for not including these claims against Wal–Mart in her original and first amended complaint and for not seeking leave to add these claims prior to January 6, 1995. Ms. Deghand did not know that Lori Falkenstein's letter even existed until March 10, 1995, when Wal–Mart supplemented its disclosure under Rule 26 and revealed the letter. Despite the apparent importance of Ms. Falkenstein's letter, Wal–Mart officials apparently never told Ms. Deghand of the letter, never presented her with a copy of it, and never placed a copy in her personnel file.

Ms. Deghand plainly lacked actual knowledge of Falkenstein's letter prior to the filing of her original or amended complaints or the passing of the deadline of January 6, 1995.

This is not a case where the plaintiff should be denied leave because she could have reasonably discovered the letter before the deadline expired. Even though Falkenstein's letter is clearly relevant to the disputed facts, Wal–Mart did not mention or allude to the letter in its initial disclosure of December 19, 1994. In opposing Ms. Deghand's motion to file a second amended complaint, Wal–Mart argued: "Whether or not she had specific knowledge of the letter, she had specific knowledge, as of December 19, 1994, that Lori Falkenstein was likely to have discoverable information relevant to plaintiff's job performance while working for defendant." (Dk. 38). The "specific knowledge" argued there exceeds what Wal–Mart actually disclosed on December 19, 1994, (Dk. 9), when it named Lori Falkenstein as a person likely to have discoverable information "relevant to the disputed facts alleged with particularity in the pleadings," "relevant to plaintiff's allegations of discrimination," and "relevant to Wal–Mart's and Sam's Club's personnel policies and procedures." (Dk. 9 at 1–2). Even if the plaintiff did not file a reply brief, the court will not accept Wal–Mart's argument as fact, because the argument is not sustained by the actual disclosures on file.

Granted, Ms. Deghand does not show that prior to January 6, 1995, she attempted to learn what information Ms. Falkenstein had concerning this case. The court, however, does not find this omission significant here. There is nothing of record showing that Ms. Falkenstein had any basis for knowing Wal–Mart's reasons for demoting Ms. Deghand or the role that her letter played in Wal–Mart's decision. Consequently, the court cannot say with much confidence that had the plaintiff informally talked with Ms. Falkenstein she would have learned of this letter. Ms. Deghand had no reason to believe from her own knowledge of the case, and Wal–Mart gave her no cause to believe, that Ms. Falkenstein would have provided information critical of Ms. Deghand's job performance that would not be found in Ms. Deghand's personnel file.

If there were some reasonable basis for Ms. Deghand believing that this had occurred, then she should have taken some steps prior to January 6, 1995, to determine whether Ms. Falkenstein knew anything. Without any such reasonable basis, a standard of diligence that would require a party to interview all possible witnesses prior to the initial deadline for filing motions to amend is, in this court's judgment, too high. The court attaches no significance to the fact the plaintiff waited until February 15, 1995, to commence her formal discovery. The court cannot call that effort belated as it was still within deadlines set by the scheduling order. Based on the entire record, the court is convinced it was error not to find that the plaintiff acted in good faith and with reasonable diligence in seeking leave to amend only after learning of Ms. Falkenstein's letter through the defendant's disclosure on March 10, 1995.

■■■■ On grounds of futility, the court denies the plaintiff leave to file a claim against Wal–Mart for intentional infliction of emotional distress that is separate from count five and based solely on Falkenstein's letter. The plaintiff alleges the defendant in soliciting Ms. Falkenstein's letter acted in an extreme and outrageous manner. Asking an employee to record her opinions and observations regarding a co-employee's performance does not remotely approach conduct that a reasonable person could say exceeded the bounds of decency or was utterly intolerable in a civilized society. *Wiehe v. Kukal,* 225 Kan. 478, 482, 592 P.2d 860 (1979). This alleged action by Wal–Mart falls within the kind of "ordinary business decisions … made every day … across the nation." *Anspach v. Tomkins Industries, Inc.,* 817 F.Supp. 1499, 1508 (D.Kan.1993), *aff'd,* 51 F.3d 285 (10th Cir.1995) (Table). The alleged action is not extreme or outrageous in character and does not become so simply because it was driven by a retaliatory or discriminatory motive. *See Anspach,* 817 F.Supp. at 1507; *Fletcher v. Wesley Medical Center,* 585 F.Supp. 1260, 1262 (D.Kan.1984). Still, the court will permit the plaintiff to include the defendant's solicitation of Falkenstein's letter as one of several instances of conduct alleged in count five, which if considered as a whole, may amount to extreme and outrageous conduct.

■■■■ The court grants the plaintiff leave to add her defamation claim. The plaintiff has alleged libel *per se,* and, thus, there is no requirement for an allegation of special damages. *See Woodmont Corp. v. Rockwood Center Partnership,* 811 F.Supp. 1478, 1483–84 (D.Kan.1993). The plaintiff has alleged publication here, as the "remarks communicated by one corporate employee to another concerning the job performance of a third employee are publication for purposes of a defamation action against the employer." *Luttrell v. United Telephone System, Inc.,* 9 Kan.App.2d 620, 623, 683 P.2d 1292 (1984), *aff'd,* 236 Kan. 710, 695 P.2d 1279 (1985). A qualified privilege exists for such communications when they are "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty." *Id.,* 9 Kan.App.2d at 622, 683 P.2d 1292. Privilege in a defamation action is an affirmative defense. *Turner v. Halliburton Co.,* 240 Kan. 1, 7, 722 P.2d 1106 (1986). The plaintiff says that if Wal–Mart asserts the affirmative defense of privilege she is ready and able to show that the qualified privilege does not exist and, alternatively, that the statement was made with actual malice. Based on the arguments of record, the court finds no basis for denying the plaintiff leave to add her defamation claim.

The proposed pretrial order does not include the defamation claim which the court has now allowed. The court gives the parties fifteen days from the filing date of this order to submit their respective contention and theories sections adding the defamation claim and any defenses. Within the same period, the parties also should submit any requests for additional issues or other changes to the pretrial order caused by the addition of the defamation claim. The court gives the defendant twenty days to file a concise supplement to its pending motion for summary judgment that addresses only the defamation claim that has now been added to this case. The requirements of Rule 56 and D.Kan.Rule 206 apply to any supplement, opposition and re-

ply. The court will not consider the defendant's pending motion for summary judgment ready for decision until the supplemental matters have been fully briefed, unless the defendant waives the right to file a supplemental brief.

IT IS THEREFORE ORDERED that the plaintiff's motion to review (Dk. 56 and 58) the magistrate judge's order (Dk. 54) filed August 4, 1995, is granted in part and denied in part. The court grants the plaintiff leave to add her defamation claim and denies her leave to add her intentional infliction of emotional distress claim. The magistrate judge's order (Dk. 54) is vacated to the extent that it is inconsistent with this order.